454 So.2d 162 (1984)
JACK A. PARKER & ASSOCIATES, INC.
v.
STATE of Louisiana, Through the DEPARTMENT OF CIVIL SERVICE, et al.
No. 83 CA 0877.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Rehearing Denied August 24, 1984.
Writ Denied November 9, 1984.
*163 Phillip Canova, Plaquemine, for plaintiff-appellant Jack A. Parker & Associates, Inc.
Tommy D. Teague, Baton Rouge, for defendant-appellee Board of Trustees of the State Employees Group Benefits Program.
Robert R. Boland, Jr, Baton Rouge, for defendant-appellee State of La., Through the Dept. of Civil Service.
Thomas A. Warner, III, Baton Rouge, for defendant-appellee Div. of Administration.
Before PONDER, WATKINS and CARTER, JJ.
*164 CARTER, Judge.
This is a suit for breach of contract filed by Jack A. Parker & Associates (Parker) against the State of Louisiana, through the Department of Civil Service; State of Louisiana, through the Division of Administration; and the Board of Trustees of the State Employees Group Benefit Program, within the Department of Treasury, State of Louisiana.
The Division of Administration entered into a joint contract with Parker and Werntz & Associates, Inc. to provide professional, actuarial, and technical services required to organize and maintain the state group insurance program for the sum of $407.496.00, payable in twelve (12) monthly payments of $18,948.00 to Werntz & Associates, Inc. and $15,010.00 to Parker. The contract further provided that reimbursable expenses shall not exceed $36,464.00. The contract was for an initial one-year period from December 1, 1978, to November 30, 1979, with an automatic extension for subsequent equal periods unless prior notice was given.
Sometime after the effective date of the contract, the Director of Civil Service requested that the Division of Administration provide him with copies of contracts for professional services entered into by the Division of Administration, maintaining that Civil Service Rules required approval of such contracts for professional services. The Division of Administration, however, refused to submit the requested contracts to the Civil Service, claiming that the Division of Administration was not subject to the Civil Service Rules.
On June 19, 1979, the Louisiana Civil Service Commission issued a stop pay order mandating that neither the Governor, nor the Treasurer, nor any other person within the state government issue any payments on approximately thirty-eight (38) contracts which the Commission had under consideration. One such contract was the joint contract between the Division of Administration and Parker and Werntz & Associates, Inc. The reason given for issuing the stop pay order was that the contracts for professional services had not been approved by the Director of Civil Service.
By letter dated July 11, 1979, the Commissioner of the Division of Administration requested approval by the Civil Service Commission of several of the questioned contracts, including the contract with Parker and Werntz & Associates, Inc. However, the Director of Civil Service declined to approve the contract on the basis that the contract did not meet the established criteria for a contract for personal services to be performed by persons outside the classified service.[1]
The Division of Administration later submitted to the Civil Service Commission a new contract between itself and Werntz & Associates, Inc. to provide the same basic service as the previous joint contract for $243,288.00, which was approved by the Commission.
Parker received payment under the original contract from December, 1978, through May, 1979. However, as a result of the June stop pay order, payment was discontinued. Plaintiff subsequently filed this suit for monies due under the contract and for damages to its business reputation.
The trial court found that the Civil Service Commission had the authority under the Louisiana State Constitution to adopt rules affecting persons possessing contracts for personal services with the State of Louisiana, which rules have the force and effect of law. The trial court also held that absent approval of the Parker-Werntz contract by the Civil Service Commission as required by Civil Service Rules 3.1(o) and 4.1(e), the contract was null and unenforceable. The trial court accordingly rendered judgment in favor of defendants and dismissed plaintiff's action. From this judgment, plaintiff appeals.
*165 The following issues are presented:
(1) Does the Louisiana Constitution of 1974 grant the Civil Service Commission the authority to make rules regulating classified service?
(2) Do Civil Service Rules 3.1(o) and 4.1(e) exceed that constitutional grant of authority?
(3) Absent of approval of a contract for professional services by the Civil Service Commission, is the contract valid?
(4) Was the action of the Civil Service Commission in declining to approve the Parker contract arbitrary and capricious?

ASSIGNMENTS OF ERROR NOS. 1 & 2
Article 10, Section 10(A)(1) of the Louisiana Constitution of 1974 provides that:
"Each commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service....
This provision gives the Civil Service Commission rule making authority to fulfill its duties. This authority was broadened from the "authority and power" granted to such commissions under Article 14, Section 15(I) of the Louisiana Constitution of 1921.
Appellant contends that without classification as a member of Civil Service or status as a classified employee, the rules enacted pursuant to Article 10, section 10(A)(1) of the Louisiana Constitution of 1974 can have no application to prospective public service contractors.
The primary rule at issue in the case sub judice is Civil Service Rules 3.1(o) which provides that the director of Civil Service shall:
"Review and approve or disapprove, in advance of their effective dates, contracts for personal services between the State, or any instrumentality thereof, and any person in order to insure that such agreements do not provide for the performance of such services for the State of Louisiana which could and should be performed by classified employees."
The rules of the Commission have the force and effect of law. La. Const. 1974, Article 10, Section 10(A)(4); Mayeaux v. Dept. of State Civil Service, 421 So.2d 948 (La.App. 1st Cir.1982); Pelletier v. Executive Department, Division of State Buildings and Grounds, 331 So.2d 72 (La. App. 1st Cir.1976). Thus, so long as the Commission's rules are reasonable and not violative of basic constitutional rights, they must be recognized and given effect by the courts. Heinberg v. Department of Employment Security, 256 So.2d 747 (La.App. 1st Cir.1971), writ refused, 260 La. 1135, 258, So.2d 381 (1972).
In Bazley v. Tortorich, 397 So.2d 475 (La.1981) the Louisiana Supreme Court recognized a list of rights which have been found to be fundamental. This listing includes freedom of expression and association, right to vote and participate in the electoral process, right to interstate travel, right to fairness in the criminal process, and right to fairness in procedures concerning governmental deprivations of life, liberty and property. Although this list is not exhaustive or exclusive, the right Parker seeks to exercise, viz. the right to contract, is not within these fundamental categories.
The question then becomes whether or not the rule enacted is reasonable.
The purpose of the Civil Service is "to secure adequate protection to public career employees from political discrimination," State v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (La. 1949); "to guarantee the independent security and welfare of public service," State v. Heard, 228 La. 1078, 84 So.2d 827 (La. 1955); and "to secure governmental employees in their positions free from discrimination of political, religious or other nature," Perkins v. Director of Personnel, 220 So.2d 253 (La. App. 1st Cir.1969).
Review of contracts entered into by the state and independent contractors rationally fulfilled the purposes and objectives behind the existence of Civil Service. Although classified employees cannot be terminated, suspended or demoted without *166 strict adherence to the provisions of Chapters 11 and 12 of the Civil Service Rules, only Rule 3.1(o) prevents the Division of Administration or any other authorized state agency from contracting away, through public service contracts, work that can and should be performed by classified employees. Without Rule 3.1(o), governmental agencies could in time grant public service contracts for all work currently performed by classified employees and in effect abolish the classified service. The effect upon the bona fide classified employees within the state service because of a public service contract's contractural relationship with the state government could be disastrous. For example, in 1974 there were approximately 56,000 state classified employees and today there are approximately 68,000 employees, the difference constituting approximately 18% of today's total. If those 12,000 employees, plus employees hired as a result of resignations, terminations, and retirement had been hired under public service contracts, there would be a significant percentage of governmental employees entrusted with a very great deal of power and responsibility over the public health and welfare, and the enforcement of the State's laws, regulations, and rules would be the subject to the whims of the State official with whom they contracted.
Not only does the State Civil Service Commission have full authority to adopt the subject rule pursuant to Article 10, Section 10(A), but it is mandated in the proper administration and regulation of the classified service to adopt and implement such rules. To require that those proposed contracts be monitored and approved by the director of Civil Service is an appropriate discharge of the Commission's responsibility under Article 10, Section 10(A) of the Louisiana Constitution of 1974 and Civil Service Rule 3.1(o) adopted pursuant thereto.
In the exercise of the Commission's "broad and general rule making the subpoena powers for the administration and regulation of the classified service," the Commission has sought to protect public employment from such detrimental factors. To this end the State Civil Service Commission has required that proposed contracts be reviewed by its Director. Therefore, clearly the Louisiana Constitution of 1974 does grant the Civil Service Commission authority to make rules regulating classified service, and Civil Service Rule 3.1(o) does not exceed the constitutional grant of authority.

ASSIGNMENT OF ERROR NO. 3
The issue presented in this assignment is whether, absent approval of the Parker-Werntz contract by the Director of the Civil Service Commission in accordance with Rule 3.1(o), a valid and binding contract exists.
In Sanders v. Dept. of Health & Human Resources, 388 So.2d 768 (La.1980), the Supreme Court held that:
"Civil service rules have the effect of law, La. Const. art. 10, § 10(A)(4), and are construed according to the rules of interpretation relative to legislation in general. Statutes may be classified generally as either mandatory or directory. If mandatory, they prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done, whereas, if directory, their terms are limited to what is required to be done. Generally, statutory provisions that do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, are directory, while provisions which relate to the essence of the thing to be done, that is, matters of substance, are mandatory. Black's Law Dictionary 414 (5th ed.1979)."
If the requirement is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory. United States v. St. Regis Paper Company, 355 F.2d 688 (2nd Cir.1966). A significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison of the results to which each such construction would lead. *167 Holbrook v. United States, 284 F.2d 747 (9th Cir.1960).
The purpose of the Civil Service Rules was succinctly set forth by the Supreme Court in Sanders v. Dept. of Health & Human Resources, supra as follows:
"The provisions of the state constitution involving the Civil Service, La. Const. art. 10, § 1, et seq., and the rules of the Commission are designed to secure adequate protection to public career employees from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the civil service rules is to guarantee the security and welfare of public service. Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800 (La.1971)."
Although Rule 3.1(o) does not prescribe the result that will follow from non-compliance, Rule 2.9(k) empowers the Commission to do the following:
"To issue orders withholding compensation from any person who, after investigation by public hearing, has been found by the Commission to be employed or paid by the State contrary to the provisions of the Constitution or the Rules adopted thereunder. Such orders may be directed to the officer having the authority to approve the payroll or assign the paycheck for such employee; and the officer to whom it is directed and any other person to whom such order is directed shall make no payment of compensation or authorize the making of any such payment to such person until authorized by the Commission upon penalty of personal liability for the sum so paid contrary to the order of the Commission and such other penalties as are otherwise provided by the Constitution and/or the Rules."
Additionally, La. Const. art. 10, § 10(A)(4) provides that "each commission may impose penalties for violation of its rules by demotion in or suspension or discharge from position, with attendant loss of pay."
We find that failure to comply with Rule 3.1(o) defeats the purpose of the civil service laws. The requirement that the Director approve or disapprove public service contracts before their effective date is essential for the protection of classified employees. If approval of such contracts between the state and proposed independent contractors was not required, state officials could easily circumvent the reasons for establishing the Civil Service Commission by granting public service contracts would have a detrimental effect on career public employees and the State of Louisiana.
Accordingly, under the law contracts for personal services between the State of Louisiana and any person must be reviewed and approved by the Director of the Civil Service Commission in advance of the proposed effective date of the contract.
In the case sub judice, the Parker-Werntz contract was not approved prior to the effective date of the contract. In fact, the Parker-Werntz contract was expressly disapproved by the director some seven months after the contract's proposed effective date.
The State of Louisiana is entitled to have the contract declared void. Individuals cannot by their conventions derogate from the force of laws made for the preservation of public order and good morals. LSA-C.C. art. 11. The laws regulating the granting of public service contracts were made "to insure that such agreements do not provide for performance of such services which could and should be performed" by public employees and thus were made for the preservation of public order. Whatever is done in contravention of a prohibitory law is void. LSA-C.C. art 12. See West Baton Rouge Parish Sch. Bd. v. T.R. Ray, 367 So.2d 332 (La.1979); Corbello v. Jefferson Davis Parish Police Jury, 262 So.2d 151 (La.App. 3rd Cir.1972); Jary v. Emmet, 234 So.2d 530 (La.App. 3rd Cir.1970) writ refused 256 La. 374, 236 So.2d 502 (La.1970); Marquette v. Housing Authority of Opelousas, 137 So.2d 374 (La.App. 3rd Cir.1962).
*168 Therefore, the Parker-Werntz contract is invalid and unenforcible for failure to comply with the law, viz. Rule 3.1(o) of the Rules of the Civil Service Commission.

ASSIGNMENT OF ERROR NO. 4
Appellant contends that the Civil Service Commission acted arbitrarily and capriciously in refusing to approve the Parker-Werntz contract. Appellant points out that shortly after the Director of the Civil Service Commission refused to approve the Parker-Werntz contract, an identical contract, was executed with Werntz which excluded Parker as a co-contractor, and this contract was approved by the Civil Service Commission.
Each contract on its face has similar if not identical language with regard to the responsibilities of the respective co-contractors. However, upon examining the services actually performed by the two co-contractors, it appears that the services provided by Werntz pursuant to both contracts were in some instances identical and yet in other instances were quite dissimilar to those provide by Parker. Additionally, Werntz provided many services beyond the services provided by Parker.
Werntz provided the actuarial services and had the computerized equipment required to perform the technical aspects of the contract. He also provided statistical services necessary to determine rates and reserve levels to maintain a fiscally stable insurance plan for state employees, in addition to prividing some service representatives in the Shreveport area.
Parker, on the other hand, provided only service representatives and other clerical services in the Baton Rouge and New Orleans areas. There was substantial evidence Parker was not even performing the minimal services he was obligated to perform.
Although the action of the Civil Service Commission may appear at first blush to have slighted Parker, a thorough review of the record convinces us that the clerical work actually performed by Parker under the contract could and should have been performed by classified employees, while the technical work provided by Werntz was of a nature which could not be performed by classified employees. Additionally, the evidence demonstrated that subsequent to the stop pay order, classified employees actually performed the service in the Baton Rouge and New Orleans area, which had previously been performed by Parker.
Because of the services actually performed by the co-contractors was of a different nature, we cannot say that the Director of the Civil Service Commission was arbitrary and capricious in refusing to approve the Parker-Werntz contract.
This assignment lacks merit.
For the above reasons, the judgment of the trial court is affirmed. All costs are to be assessed against appellant Parker.
AFFIRMED.
NOTES
[1] The Division of Administration sought a stay of the Civil Service Commission's actions through the First Circuit Court of Appeal. Such request, however, was denied on July 31, 1979 (No. 13,047).