611 So.2d 739 (1992)
Charles W. PHELPS, Sr.
v.
LOUISIANA STATE RACING COMMISSION.
No. 92-CA-0046.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
Jack H. Kaplan, Shreveport, for appellee.
Richard Ieyoub, Atty. Gen., Robert A. Barnett, Asst. Atty. Gen., Baton Rouge, and John E. Jackson, Jr., Asst. Atty. Gen., New Orleans, for appellant.
*740 Before BARRY and WARD and JONES, JJ.
JONES, Judge.
The Louisiana State Racing Commission appeals the trial court's judgment reversing the decision of the Racing Commission suspending plaintiff's, Charles W. Phelps, Sr., license as an owner/trainer and access to all facilities under the supervision of the Louisiana State Racing Commission. Consistent with a prior opinion of this court, Holthus v. Louisiana State Racing Commission, 580 So.2d 469 (La.App. 4th Cir.) writ denied 584 So.2d 1162 (La.1991), finding the Human Drug Testing Rules of the Louisiana State Racing Commission constitutional, we reverse the trial court's judgment.
Plaintiff was a horse trainer, licensed by the Racing Commission of the State of Louisiana. Upon arrival at the race track at Evangeline Downs on August 12, 1990, he was ordered to take a urine test for drugs pursuant to the Louisiana State Racing Commission's Human Drug Testing Rules. The test yielded a positive showing for the presence of drugs. After an adverse steward's hearing, he appealed the case to the Louisiana State Racing Commission, which upheld the ruling of the stewards of Evangeline Downs suspending plaintiff for thirty (30) days and requiring him to provide a negative urine sample before he could be reinstated. From that adverse ruling, he appealed to the district court. The district court reversed the Racing Commission without assigning reasons and from that decision the Louisiana State Racing Commission filed this appeal.
The parties stipulate that the sole issue presented by this appeal is the constitutionality of the Louisiana State Racing Commission's Human Drug Testing Rules. This court has had recent opportunity to address that issue in Holthus, supra. In Holthus, this court reasoned that the trial court erred in finding that the Human Drug Testing Rules were unconstitutional in that the trial court failed to consider the governmental interest in protecting the integrity of the horse racing industry "which requires close and constant supervision in order to avoid the spread of corrupt, dishonest, and unprincipled horse racing practices." Holthus at 471. See also: La.R.S. 4:141; Pullin v. Louisiana State Racing Commission, 484 So.2d 105, 108 (La.1986)
Plaintiff argues that Holthus should be overruled. Plaintiff argues that The Louisiana State Racing Commission's Human Drug Testing Rules offers no written procedures that would insure that there was no discretion in the stewards as to who to test. Plaintiff further argues that the discretion is unbridled within the stewards and no requirement exists that everyone be tested at the same time. The Commission has produced written procedures but whether they were properly adopted is not before us.
Furthermore, plaintiff argues that the rules were not designed to promote safety but to detect criminal behavior. Plaintiff reasons that the Commission has no way of determining whether the use of the controlled dangerous substance occurred while the individual was acting in the course of his professional practice, nor is the use of prescription medication proscribed so long as the Commission is advised of its use. These arguments by plaintiff are not determinative since in Holthus this court wrote that the government's interest in safety was not exclusive, but that government also has a vital interest in maintaining the integrity of the industry.
Finally, plaintiff argues that the Holthus court ignored jurisprudence inapposite to Shoemaker v. Handel, 795 F.2d 1136 (3d Cir.) cert. denied 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986), which the Holthus court relied on, specifically Lovvorn v. City of Chattanooga, Tenn., 846 F.2d 1539 (6th Cir.1988). Lovvorn refused to follow Shoemaker finding that "a mandatory urinalysis violates the fourth amendment interest of public employees when it is carried out in the absence of reasonable individualized suspicion." supra at 1545. The Lovvorn court also wrote, at page 1545, that
[w]e reject the argument that solely because a given employment industry is *741 heavily regulated, such as air traffic control or horse racing, that it follows that mandatory urinalyses may be condoned in the absence of individualized suspicion....
Plaintiff's arguments are persuasive except that Lovvorn was vacated two years later by the court in its opinion in Penny v. Kennedy, 915 F.2d 1065 (6th Cir.1990). The facts on which the court based its opinion in Penny involved department-wide testing of police officers and firefighters which we find distinguishable from the instant case. The court observed in Penny that a compelling state interest exists where employees "discharge duties fraught with such risks of injuries to others [and themselves] that even a momentary lapse of attention can have disastrous consequences." It is less justifiable for this court to follow those opinions stating that a "reasonable suspicion" is not required before testing where there is no compelling state interest to outweigh individual due process and Fourth Amendment rights. Furthermore, the Penny court remanded for an inquiry as to whether the due process and Fourth Amendment aspects of the actual carrying out of the search were met. The Penny court wrote that the "integrity of the test and the manner and means by which it is given" could defeat its constitutionality. The Penny court went on to indicate that an individual should know he must take a drug test and should also be aware of the procedures followed in administering the test and should not simply be "subject to the discretion of the official in the field."
The subject of random testing by a licensing agency was fully discussed by the Louisiana Supreme Court in State of Louisiana v. Victor Church, 538 So.2d 993 (La.1989). The Supreme Court emphasized in Church that Article 1, Section 5, of the Louisiana Constitution of 1974 does not duplicate the Fourth Amendment of the U.S. Constitution. The Court wrote, "It represents a conscious choice by the citizens of Louisiana to give a `higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.'" id. at 996 (citation omitted). The Court also wrote, "The `probable cause' requirement was extended to the protection against unreasonable invasion of privacy, searches and seizures in the Louisiana Constitution, which guarantees `the right to be let alone.'" id. at 997.
We are further persuaded that the issue of random drug testing instituted by the Racing Commission should be revisited by the Louisiana Supreme court as a possible violation of the Louisiana Constitution in that the Louisiana Legislature adopted drug testing procedures, La.R.S. 49:1001, in 1990 that are designed to protect individual constitutional rights. The legislation is broad in scope and would control all drug testing in the state including testing by public entities under La.R.S. 49:1015, specifically the Louisiana State Racing Commission.
E. In the event the Louisiana State Racing Commission shall require or conduct drug testing on its employees, agents, and representatives, the Commission shall comply with the provisions of this Part and the Louisiana Administrative Procedure Act as well as seek prior approval of the procedures of the drug testing by the appropriate legislative oversight committee. The failure of the State Racing Commission to receive the required legislative approval shall negate all test results conducted under the non-approved procedures. Any drug testing program or procedure required or conducted by the State Racing Commission shall be applicable and include the members of the State Racing Commission.
Emphasis added.
The program instituted by the Racing Commission, admittedly prior to the effective date of the afore-mentioned legislation, does not incorporate any of the constitutional safeguards mandated by the legislature, specifically that random drug testing be limited to safety-sensitive or security-sensitive positions.
In Romaguera v. Gegenheimer, 798 F.Supp. 1249 (E.D.La.1992), the federal district court discussed at length the balance between the state's interest in detecting *742 drug abuse and an individual's right to privacy. The court noted, "the impairment of individual liberties cannot be the means of making a point...."
For the foregoing reasons, the trial court's judgment is reversed.
REVERSED.