PLOTKIN, Judge.
Plaintiffs, a class of approximately 100 present and former New Orleans Police Department officers, seek review of a trial court decision granting a motion for summary judgment in favor of defendant City of New Orleans. Because we find genuine issues of material facts and because the City has not shown that it is entitled to summary judgment as a matter of law, we reverse.

Facts

The plaintiffs claim that prior to July 10, 1980, the City of New Orleans, through its police department supervisors, routinely allowed police officers to “run out” their accrued sick leave in anticipation of retirement. This “custom” arose, the plaintiffs say, because their supervisors allowed them to continue drawing their regular salaries without requiring them to report to work, until they no longer had any accumulated sick leave. The plaintiffs claim that this “unofficial policy,” which allowed them one day off for every day of accrued sick leave, was explained to them at the time they were hired and that it was used as an inducement for employment.
During the period of time in question, the City of New Orleans had an official written policy, evidenced by Chief Administrative Office Policy Memorandum No. 86, originally issued October 20, 1971, which allowed retiring city employees to convert accumulated sick leave to salary at the rate of one day of salary for every five days of accrued sick leave. That written policy was revised several times between 1971 and 1980, and renumbered Memorandum No. 15 at one point, but continued to provide basically the same benefits throughout that period. Then, on July 10, 1980, the Civil Service Commission, which governs employment of many city employees, including police officers, instituted a rule officially adopting the City’s policy allowing employees one day salary for every five days of accrued sick leave.
Upon promulgation of the new Civil Service rule, the plaintiffs filed suit against the City, claiming that the existence of the long-term practice allowing police officers to “run out” their accrued sick leave had resulted in an implied contract entitling them to do the same. The plaintiffs claim that the five-to-one rule deprives them of a vested property right without due process of law.
After discovery, the City filed a motion for summary judgment, arguing that the plaintiffs were not entitled to the benefit they sought because no contractual agreement existed between the City and the police officers and because the alleged contractual agreement violated formal written City policy and Civil Service rules. The trial court granted the motion for summary *674 judgment; plaintiffs appealed. For the reasons explained infra, we reverse.

Standard for Granting Motion for Summary Judgment

When reviewing a trial court decision granting a motion for summary judgment, appellate courts consider the evidence de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). That is, the appellate court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966(B). Thus, a motion for summary judgment may be granted only when the mover has proven both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in his favor. Schroeder, 591 So.2d at 345.

Genuine Issues of Material Fact

The parties to this case agree that determination of whether an implied contract was formed by the facts and circumstances in this case is controlled by the Louisiana Supreme Court’s decision in Knecht v. Board of Trustees for State Colleges & Universities, 591 So.2d 690 (La.1991). In Knecht, the court found that unclassified university employees had a valid, enforceable contractual right to accrued compensatory time which arose when the employees worked overtime pursuant to the board’s policy permitting them to receive paid time off in exchange for working overtime. Id.
The court found that a bilateral contract was completed when the employees “accepted” the board’s “offer” by working the requested overtime hours and that the board thus became obligated to provide the paid leave. Id.
Louisiana’s contract law was summarized in Knecht as follows:
Under the law of conventional obligations as it was enunciated by the Civil Code articles in effect during the years 1974-79, consent is an essential element of the conventional obligation. La.Civ. Code art. 1779 (1870). Consent may be given expressly or by implication, La.Civ. Code art. 1780 (1870), but must be evinced in some manner that causes it to be understood by the other party. La. Civ.Code art. 1797 (1870). One who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent, and the other party timely assents. Art. 1802, 1811 (1870). When consent is not express, or when the law creates no presumption of consent, the trial judge is to ascertain, from the facts and circumstances of the case, whether the parties’s consent is to be implied from them. Art. 1818 (1870). When the intent of the parties is doubtful, the court may look to the manner in which that intent was carried out by both parties, or by one with the express or implied assent of the other. Art. 1956 (1870); 1 Litvinoff § 135 at p. 227 (1975).
An obligation arising out of a contract extends not only to what is expressly stipulated but also to everything that by law equity, or custom is considered incidental to the particular contract. La. Civ.Code art. 1903 (1870). For this reason, in cases in which a party’s subjective intent differs inadvertently from his or her declared intent, the court may find a party to be bound to more than he actually intended. 1 Litvinoff, supra, at p. 228. In such cases, the court should ascertain whether the declared intent, as determined from the clear words, or from the facts and circumstances when the words are unclear, could have reasonably led *675 the other party to rely on it. Art. 1818 (1870); 1 Litvinoff, supra, at 227-229.
Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. Courts have applied this rule to the governmental employer in the same manner as it applies to a private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer’s whim. (Citations omitted.)
Id. at 694-95. (Emphasis added.)
The City argues that the instant case is factually distinguishable from the Knecht case in two ways: (1) the Knecht case involved an express written agreement, and (2) no one with authority to bind the City consented to the alleged implied contract which the plaintiffs seek to establish. Thus, the City argues, the Knecht case should not control the result in the instant case.
Although the City is correct that the policy at issue in the Knecht case had been written down in the form of an executive order allowing the use of compensatory time, the fact that the policy had been written down was not decisive in that case, as is demonstrated by the following quotation from the case:
[O]ur First Circuit Court of Appeal concluded that a governmental employer’s policy of granting paid leave for overtime, if well-known and routinely followed, constitutes a legally enforceable contract with the employees subject to it. Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La.App. 1st Cir. 1988).
Id. 591 So.2d at 695. (Emphasis added.) A review of the Jones case reveals that the policy at issue there was not written, but “was well known and routinely followed.” 526 So.2d at 465. The fact that the Supreme Court cited the Jones case with approval indicates that the rule established by Knecht applies to unwritten, as well as written, policies, if the policy is “well known and routinely followed, Id., or if the policy is considered incidental to the contract “by law, equity, or custom.” Knecht, 591 So.2d at 694.
In support of its position that the alleged policy to allow police officers to “run out” their sick leave was “well known and routinely followed,” the plaintiffs submitted the deposition of Henry Morris, a retired New Orleans Superintendent of Police who is now deceased, who admitted that the policy existed in the department at least from January of 1950, when he became a ranking officer. Additionally, the plaintiffs presented numerous affidavits[1] from police officers, all of which contain the following statement:
I was made aware of this unwritten policy, at the time I became employed by the New Orleans Police Department and in fact relied upon it as part of my employment with the New Orleans Police Department. ... The policy was discussed openly and officially to myself and others specifically when myself and others were hired and at different times in my career.
The plaintiffs also submitted employment records which indicated that some 13 per cent of the 83 police officers who retired during 1976, 1977, and 1978 “ran out” their sick leave, a fact which the City admits.
Since all evidence and inferences drawn from the evidence must be construed in the light most favorable to the plaintiffs, all the plaintiff's allegations must be taken as true, and all doubt must be resolved in the plaintiffs’ favor in considering whether the trial court properly granted the City’s motion for summary judgment, Schroeder, 591 So.2d at 345, we find that the evidence presented by the plaintiffs, as described *676 above, is sufficient to raise a genuine issue of material fact concerning whether the alleged policy to allow police officers to “run out” sick leave was “well known and routinely followed.” Thus, the trial court improperly granted the motion.
The City’s second factual argument is that no one with authority to bind the City ever consented to the alleged “contract;” thus, the contract does not exist. In support of this argument, the City presented affidavits from the following people: Leroy J. Aucoin, the City’s Chief Administrative Officer since October 9, 1974; J. Michael Doyle Jr., the current Director of Personnel with the City Civil Service Commission and a 20-year employee of the Commission; and James C. Parsons, Superintendent of New Orleans Police from June 12, 1978 to December 1, 1980. All of these affiants testified that they never consented to, and that they were unaware of the existence of, the policy described by the plaintiffs. Thus, the City argues, “no one in the City’s Chief Administrative Office, or the Department of Civil Service ever consented to a contract allowing police officers to engage in the practice of running out sick leave in anticipation of retirement when not sick.”
Once again, the evidence presented by the plaintiffs in opposition to the motion for summary judgment — i.e. Morris’ deposition, the affidavits from the police officers, and the employment records — is sufficient to create a genuine issue of material fact on whether the City consented to the alleged contract, under the law as pronounced in Knecht. Even assuming that the City is correct and that no one in the Chief Administrative Office or Department of Civil Service ever consented to the contract, the City has not shown that no one with express or implied authority consented. The plaintiffs allege that their police department supervisors gave implied consent to the policy, even going so far as to use the policy as an inducement to employment. Unquestionably, police department supervisors can be clothed with implied authority to enter such contracts under certain circumstances. Thus, our de novo review of the plaintiffs’ evidence convinces us that a question remains on this issue.[2] The existence of a genuine issue of material fact on this issue, as well as on the issue discussed above, makes the granting of the motion for summary judgment inappropriate.

Entitlement to judgment as a matter of law

The City’s alternative argument is a legal argument. The City claims that even if questions of fact remain, summary judgment is still appropriate because the contract, if it exists, is contrary to law and therefore null and void. The City thus alleges that the issues of fact identified above are neither “genuine” nor “material” and therefore should not prevent summary judgment.
This argument is based on two Civil Service rules, which provide as follows:
If the amount of sick leave taken exceeds six (6) consecutive work days, a registered physician must certify to the nature of the illness or injury and the necessity for absence after the sixth consecutive working day.
Civil Service Rule VIII, § 2.2(a).
When an appointing authority has determined that an employee has charged an absence against sick leave although no actual sickness or illness, as defined in Rule I occurred, the appointing authority must deduct the value of the absent time from the employee’s accrued annual *677 leave or pay and may also take disciplinary action as deemed appropriate under the circumstances.
Civil Service Rule VII, § 2.2(c).
In support of its argument on this issue, the City cites Jack A, Parker & Associates, Inc. v. State of Louisiana, 454 So.2d 162 (La.App. 1st Cir.1984), in which the court declared that the State could have a contract which violated a civil service rule declared void under La.C.C. art. 11 because it “derogated from the force of laws made for the preservation of public order and good morals.” Id. at 167. The City would have us apply the rule announced in Parker to every contract which violates a Civil Service rule.
However, the Parker rule is limited by the language in the case to Civil Service rules which “are reasonable and not viola-tive of basic constitutional rights.” Id. at 165. In the instant case, the plaintiffs claim that they are being deprived of a vested property right, which is a basic constitutional right under the rules established in Bazley v. Tortorich, 397 So.2d 475 (La. 1981) and quoted in Parker. The argument that the plaintiffs are being deprived of a vested property right is supported by the language of Knecht, provided the plaintiffs are able to prove at trial that an implied contract existed. Under Parker, if the civil service rules in question deprive the plaintiffs of a vested property right, contracts made in violation of those rules are not necessarily null and void. Thus, the exact factual issues discussed above are “genuine” and “material” to determining whether the City is entitled to judgment as a matter of law under this argument. For this reason also, the trial court’s granting the motion for summary judgment was inappropriate.

Conclusion

Accordingly, the trial court judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WARD, J., concurs.
SCHOTT, C.J., dissents.

. The City argues that the affidavits are insufficient to raise a genuine issue of material fact because they are hearsay. However, we note that the portion of the affidavits quoted and relied upon by the plaintiffs contains no hearsay, since it does not qualify as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.C.E. art. 801(C).

. The City seeks to undermine the sufficiency of the plaintiff’s affidavits by claiming that the plaintiffs had the "burden of proof on this issue and asserting that the affidavits are inadequate because the plaintiffs “fail to identify any person employed by the City of New Orleans with the authority to consent to a contract on behalf of the City.” However, on a motion for summary judgment, the moving party — in this case, the City — carries the burden of proving that no genuine issues of material fact exists and that it is entitled to judgment as a matter of law. The plaintiffs only had the burden of proving that a genuine issue of fact exists, which they did with their affidavits. Perhaps the plaintiffs would be required to prove the exact identity of the persons making the representations at trial, but the affidavits are certainly sufficient to defeat the motion for summary judgment.