853 So.2d 697 (2003)
Danny SANCHEZ
v.
GEORGIA GULF CORPORATION, Kroll Laboratory Specialists, Inc. and Consolidated Drug Compliance & Management, Inc.
No. 2002 CA 1617.
Court of Appeal of Louisiana, First Circuit.
August 13, 2003.
Rehearing Denied September 17, 2003.
*699 Andre LaPlace, Baton Rouge, for Plaintiff/Appellee, Danny Sanchez.
F. Charles Marionneaux, Plaquemine, for Defendant/Appellant, Georgia Gulf Corporation.
Before: CARTER, C.J., WHIPPLE and CIACCIO, JJ.[1]
WHIPPLE, J.
Defendant, Georgia Gulf Corporation, appeals the judgment of the trial court, granting the motion for partial summary judgment and "Motion for Res Judicata" of plaintiff, Danny Sanchez, finding that Georgia Gulf had failed to properly follow statutory procedures for his employment-related drug testing and, thus, that the "positive" test result was invalid as a matter of law. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On June 15, 2000, Sanchez, an "at-will" employee of Georgia Gulf, submitted to a random drug screen urinalysis.[2] He was *700 subsequently terminated from employment on June 22, 2000, for allegedly testing positive for the presence of a cocaine metabolite, Benzoylecgonine. Thereafter, on September 26, 2000, Sanchez instituted this action against Georgia Gulf, contending that it had breached its statutory duties to him in dismissing him on the basis of a positive drug test without first allowing him the opportunity to provide information about prescription medication he was taking that could result in an erroneous positive result.[3] Sanchez sought damages for physical and mental pain and suffering, loss of income, loss of reputation and medical expenses.
Georgia Gulf responded by filing a motion for summary judgment, essentially contending that because it could fire Sanchez "for any reason or for no reason" pursuant to the at-will employment doctrine, Sanchez had no claim for damages for wrongful termination.[4] In opposing the motion, Sanchez contended that LSA-R.S. 49:1001 et seq., the statutory scheme governing employment-related random drug testing ("the drug-testing statute"), provided a statutory basis for his claim for damages. He argued that where termination was based upon drug-testing results, certain statutory requirements must be met, such as review of the results by a medical review officer and questioning of the employee as to any medications he may be taking which may give rise to a false positive result. According to Sanchez, these statutory requirements were not followed herein, and, therefore, he had a statutory claim against Georgia Gulf for damages associated with Georgia Gulf's employment-related actions, including his wrongful termination.
Thus, Sanchez also filed a cross-motion for summary judgment, contending that he was entitled to judgment in his favor, declaring that "the `positive' cocaine test result attributed to him was invalid as a matter of law." Sanchez also filed a "Motion for Res Judicata," wherein he moved to have the court apply the doctrine of res judicata to certain stipulations made by Georgia Gulf in an administrative hearing before the Louisiana Appeals Tribunal for the Office of Regulatory Services. Based on those stipulations, Sanchez requested that the court find as a fact that "[t]he procedures for drug testing Danny Sanchez's random employment urine specimen were not properly followed by the employer Georgia-Gulf Corporation." (Underscore omitted).
At the hearing on the motions, Georgia Gulf conceded that it had not followed the procedures mandated by LSA-R.S. 49:1007, in that the results of Sanchez's urinalysis were not reviewed by a medical review officer prior to disciplinary action being taken. Nonetheless, it contended that LSA-R.S. 49:1001 et seq. does not prohibit an employer from taking disciplinary action against an employee, such as termination of employment, based on a positive drug test even though the drug *701 testing results are obtained without compliance to the drug-testing procedures set forth therein. Thus, it contended that it was still free to fire Sanchez pursuant to the at-will employment doctrine.
Following the hearing on the motion, the trial court concluded that LSA-R.S. 49:1001 et seq. grants an employee a cause of action for damages, including damages for wrongful termination, where the employee is fired because of urinalysis results obtained without compliance to the statutory drug-testing provisions. Accordingly, the trial court denied Georgia Gulf's motion for summary judgment; granted Sanchez's motion for summary judgment, declaring that the "positive" cocaine test result attributed to Sanchez was invalid as a matter of law; and granted Sanchez's "motion for res judicata," regarding a finding of fact that the procedures for testing Sanchez's random employment urine specimen were not properly followed by Georgia Gulf.
From this judgment, Georgia Gulf appeals, challenging the granting of Sanchez's motion for summary judgment and the granting of his motion for res judicata.[5]

LOUISIANA'S DRUG-TESTING STATUTE
Prior to addressing Georgia Gulf's assignments of error herein, a brief overview of Louisiana's drug-testing statute is necessary for an understanding of the issues presented. In 1990, the Louisiana legislature adopted drug-testing procedures set forth in LSA-R.S. 49:1001 et seq., that are designed to protect individual constitutional rights. See Phelps v. Louisiana State Racing Commission, 611 So.2d 739, 741 (La.App. 4th Cir.1992). Pursuant to this legislation, drug testing of Louisiana residents and of all samples collected in this state shall be performed in accordance with the Mandatory Guidelines for Federal Workplace Drug Testing Programs, as issued by the National Institute on Drug Abuse Guidelines and published in the Federal Register ("NIDA guidelines").[6] LSA-R.S. 49:1005(B); LSA-R.S. 49:1001(14). The NIDA Guidelines specify collection and testing procedures in order to assure accurate and unadulterated tests, set out specific requirements for reviewing and interpreting positive results and require that a medical review officer review the drug tests prior to reporting the results to the employer. Price v. City of Bossier City, 96-2408, pp. 2-3 (La.5/20/97), 693 So.2d 1169, 1171.
Specifically, the statutory framework contemplates that the sample be collected by a trained individual known as the "collection site person." LSA-R.S. 49:1006; LSA-R.S. 49:1001(5); 59 Fed.Reg. 29908 §§ 1.2 & 2.2. The transfer of the sample to an appropriate laboratory is then regulated to ensure a proper chain of custody. LSA-R.S. 49:1006(E).
Pursuant to the statute, an initial or screening test is then performed on the *702 sample. This test is an immunoassay screen used to eliminate "negative" urine specimens from further consideration. LSA-R.S. 49:1008; LSA-R.S. 49:1005(A); LSA-R.S. 49:1001(9). The initial or screening test may be performed either by a NIDA-certified laboratory or laboratory certified for forensic urine drug testing by the College of American Pathologists ("CAP-FUDT-certified laboratory") or by a "screening laboratory," which is a facility that is state-certified, but not NIDA- or CAP-FUDT-certified. LSA-R.S. 49:1008(A); LSA-R.S. 49:1005(A); LSA-R.S. 49:1001(2), (13) & (20).
The statute specifies that if the initial test is positive, a second test, called a confirmatory test shall be performed by a NIDA- or CAP-FUDT-certified laboratory.[7] LSA-R.S. 49:1008(D); LSA-R.S. 49:1001(6). The confirmatory test uses a different technique and chemical principle from that of the initial test in order to ensure reliability and accuracy. LSA-R.S. 49:1001(6).
The drug-testing statute further provides that all confirmed positive drug test results shall be reported directly from the laboratory to a qualified "medical review officer" for review. LSA-R.S. 49:1007(A) & (B). A "medical review officer" ("MRO") is statutorily defined as a "licensed physician responsible for receiving laboratory results generated by [an employer's] drug testing program who has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's positive test result together with his medical history and any other relevant biomedical information." LSA-R.S. 49:1001(10).
In reviewing the confirmed positive result, the employer's designated MRO shall contact the individual who submitted the specimen as outlined in the NIDA guidelines, before making a final decision to verify a positive result or report that result to the employer. LSA-R.S. 49:1007(B) & (C). With regard to the purpose of the requirement of review by an MRO, the NIDA guidelines provide as follows:
An essential part of the drug testing program is the final review of results. A positive test result does not automatically identify an employee/applicant as an illegal drug user. An individual with a detailed knowledge of possible alternate medical explanations is essential to the review of results. This review shall be performed by the MRO prior to the transmission of results to agency officials [or, in this case, the employer].

* * *
The role of the MRO is to review and interpret positive test results obtained through the agency's testing program. In carrying out this responsibility, the MRO shall examine alternate medical explanations for any positive test result. This action could include conducting an medical interview with the donor, review of the donor's medical history, or review of any other relevant biomedical factors. The MRO shall review all medical records made available by the donor when a confirmed positive test could have resulted from legally prescribed medication.
59 Fed.Reg. 29908 § 2.6(a) & (b) (1994) (emphasis added).
Additionally, with regard to the requirement that the MRO contact the individual who submitted the specimen, the NIDA *703 guidelines provide that prior to making a final decision to verify a positive test result, the MRO shall give the donor an opportunity to discuss the test result with him. 59 Fed.Reg. 29908 § 2.6(c) (1994). Under the statutory framework of the drug-testing statute and the NIDA guidelines, only after reviewing and verifying a positive test result shall the MRO report the result to the employer. LSA-R.S. 49:1007(B); 59 Fed.Reg. 29908 § 2.6(c).

SUMMARY JUDGMENT

(Assignments of Error Nos. 1 & 2)
In its first and second assignments of error, Georgia Gulf contends that the trial court erred in granting Sanchez's motion for summary judgment, and finding that the positive drug test result was invalid as a matter of law, contending (1) there was conflicting evidence regarding whether the results had been reviewed by an MRO, and (2) LSA-R.S. 49:1007 does not require the invalidation of positive drug test results if the results were not reviewed by an MRO.
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Pursuant to LSA-C.C.P. art. 966(C)(2), if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. Keller v. Case, 99-0424, p. 3 (La.App. 1st Cir.3/31/00), 757 So.2d 920, 922, writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 354. Moreover, as consistently noted in LSA-C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Hunter v. Tensas Nursing Home, 32,217, p. 3 (La.App. 2nd Cir. 10/27/99), 743 So.2d 839, 841, writ denied, 99-3334 (La.2/4/00), 754 So.2d 228.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Keller, 99-0424 at p. 4, 757 So.2d at 922.
Georgia Gulf first contends that there are factual disputes as to whether Sanchez's positive test result was subjected to review by a medical review officer. However, we note that at the hearing on the motions for summary judgment and the motion for res judicata, counsel for Georgia Gulf stipulated that no such review had occurred. When arguing the motion for summary judgment on behalf of Georgia Gulf, counsel stated, "The only stipulation was that we did not have an MRO, a doctor come in and review the test." Additionally, at a later point in the hearing, when plaintiff's counsel was presenting argument in support of Sanchez's motions, counsel for Georgia Gulf again stated as follows: "Your Honor, we stipulated for purposes of that hearing [regarding unemployment benefits]. We stipulated that there was no MRO involved. And we *704 won't... I stipulated, Your Honor, for the purposes of this summary judgment. And in truth and in fact I don't think I will contest that at trial."
Parties are bound by their stipulations regarding factual matters. Bujol v. Entergy Services, Inc., XXXX-XXXX, p. 8 (La.App. 1st Cir.8/14/03), 833 So.2d 947, 957. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court when it is not in derogation of law. Crawford v. Blue Cross Blue Shield of Louisiana, 99-2503, p. 7 (La.App. 1st Cir. 11/3/00), 770 So.2d 507, 512, writ denied, XXXX-XXXX (La.2/16/01), 786 So.2d 98. Considering the foregoing stipulations by counsel for Georgia Pacific at the hearing on these motions, we find no merit to the argument that genuine issues of fact remain as to whether Sanchez's positive test result was subjected to MRO review as contemplated by the drug-testing statute.[8]
Additionally, we find no merit to Georgia Gulf's contention that the drug-testing statute does not provide that positive drug test results will be considered invalid if the results are not reviewed by an MRO. While conceding that LSA-R.S. 49:1007 provides that a positive test result "shall" be reviewed by an MRO, Georgia Gulf argues that this statute is not mandatory, but, rather, is merely directory.
Louisiana Revised Statute 49:1007(B) provides, in pertinent part, that "[t]he medical review officer shall review all confirmed positive drug testing results of employees and report such results to the employer in compliance with the NIDA guidelines." (Emphasis added). With regard to interpretation of this language, LSA-R.S. 1:3 provides as follows:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
The word "shall" in a statute or ordinance generally denotes a mandatory duty. Orleans Levee District v. Glenn, 577 So.2d 336, 337-338 (La.App. 1st Cir.1991). However, the jurisprudence has held that a statute, though phrased in the imperative, may not necessarily be mandatory. Sanders v. Department of Health & Human Resources, 388 So.2d 768, 770-771 (La.1980); Department of Corrections v. Pickens, 468 So.2d 1310, 1314 (La.App. 1st Cir.1985).
Statutes may be classified as either mandatory or directory. The Louisiana Supreme Court has held that, if mandatory, they prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done, whereas, if directory, their terms are limited to what is required to be done. Generally, statutory provisions that do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, are directory, while provisions which relate to the essence of the thing to be done, that is, matters of substance, are mandatory. Sanders, 388 So.2d at 770; Jack A. Parker & Associates, *705 Inc. v. State, Through the Department of Civil Service, 454 So.2d 162, 166 (La.App. 1st Cir.), writ denied, 459 So.2d 538 (La.1984).
The interpretation of a statute as directory or mandatory depends upon legislative intent. Although a statute may not prescribe the result that will follow from non-compliance, if the requirement of the statute is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory. See Jack A. Parker & Associates, Inc., 454 So.2d at 166. A significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison of the results to which each such construction would lead. Jack A Parker & Associates, Inc., 454 So.2d at 166.
The drug-testing statute represents a comprehensive procedure that employers must follow in conducting drug testing of its employees that is designed to assure accurate and unadulterated tests and results. See Price, 96-2408 at pp. 3-4, 693 So.2d at 1171. As detailed above, the strict specimen collection procedures, chain of custody requirements, testing methods and review process are designed to achieve this goal of accuracy. As noted by the United States District Court for the Northern District of New York, a generally-held belief in the accuracy of drug tests may lead employers to place undue confidence in their results. Santiago v. Greyhound Lines, Inc., 956 F.Supp. 144, 151 (N.D.N.Y.1997). As the court further emphasized, the harm to employees falsely accused is significant, even devastating, noting as follows:
An employee can be shut out of the job market as a result of a tainted or negligent test result or report. The stigma as a drug user can cast doubt on the future prospects of employment, even if the test is later discovered to be a false positive. In a company that is downsizing, a mark or suspicion of any kind may result in an employee's termination and long-term unemployment.
Santiago, 956 F.Supp. at 151 (quoting David W. Lockard, Protecting Medical Laboratories from Tort Liability for Drug Testing, 17 J. Legal Med. 427, 428 (1996)).
Although LSA-R.S. 49:1007 does not prescribe the specific result that will follow from non-compliance, we conclude that failure to comply with the provisions of this statute would defeat the purpose of the drug-testing statute. As the legislature correctly recognized, the requirement that a positive result be reviewed by an MRO and verified as positive after consultation with the employee regarding relevant prescription medication or health conditions is essential for the protection of employers, who want to ensure a drug-free work environment, and employees, who voluntarily submit to these drug screens. Absent a requirement that such results be reviewed by a qualified MRO, an employee who falsely tests positive is deprived of the ability to explain those results. As the legislature apparently recognized, the detrimental effect to the employee's career could be devastating. Indeed, in the instant case, Sanchez avers that he was a twenty-six year employee of Georgia Gulf who has never used illegal drugs, but was fired without being given the opportunity to discuss medication he was taking and any effect it may have had on the test results. This factual situation, if established at trial, is precisely the type of devastating result that may occur where an employee is deprived of the opportunity to explain the results.
Accordingly, we conclude that because failure to comply with the provisions of LSA-R.S. 49:1007 would defeat the purpose *706 of the drug-testing statute as a whole; thus, these requirements are mandatory. See Jack A. Parker & Associates, Inc., 454 So.2d at 166-167. Georgia Gulf's argument to the contrary is without merit.
Because we conclude that the requirement of MRO review pursuant to LSA-R.S. 49:1007 is mandated by the statute, and there is no factual dispute that MRO review as contemplated therein did not occur in this case, we find no error in the trial court's granting of Sanchez's motion for summary judgment, finding that "the `positive' cocaine test result attributed to [Sanchez] was invalid as a matter of law."

RES JUDICATA

(Assignment of Error No. 3)
Georgia Gulf also challenges the trial court's ruling that the doctrine of res judicata applied to its stipulation in an administrative hearing that the drug-testing procedures were not properly followed by Georgia Gulf and its resultant finding that "[t]he procedures for drug testing Danny Sanchez's random employment urine specimen were not properly followed by the employer Georgia Gulf Corporation."
Louisiana Revised Statute 13:4231 states that a valid and final judgment is conclusive between the same parties. Under the principle of issue preclusion set forth in LSA-R.S. 13:4231(3), "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." Once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Segal v. Smith, Jones & Fawler, L.L.P., XXXX-XXXX, p. 5 (La.App. 4th Cir.1/29/03), 838 So.2d 62, 65. Thus, the three requirements for issue preclusion are: (1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment. Horrell v. Horrell, 99-1093, p. 4 (La.App. 1st Cir.10/6/00), 808 So.2d 363, 373 (on rehearing), writ denied, 2001-2546 (La.12/7/01), 803 So.2d 971.
In support of his "Motion for Res Judicata," Sanchez introduced the August 18, 2000 decision of an administrative law judge of the Appeals Tribunal for the Office of Regulatory Services, which decision was rendered in connection with Sanchez's claim for unemployment benefits. In the decision, the administrative law judge stated that "[p]rior to the beginning [o]f the hearing, both attorney's [sic] stipulated on tape that the procedures of the drug testing was [sic] not properly followed by the employer. The claimant was not given an opportunity to list any prescription drugs that were in his system that could possibly give a false reading." The administrative law judge further determined that "the medical reviewing officer never contacted the claimant to discuss any prescription drugs that could have been used by the claimant prior to taking the drug screening test."
On appeal, Georgia Gulf contends that the third requirement for issue preclusion was not met, i.e., it contends that the issue litigated in the hearing for unemployment benefits differs from the issue arising in the present litigation. According to Georgia Gulf, it should not be bound by its prior stipulations because the issue presented at the administrative hearing was whether the procedures set forth in LSA-R.S. 23:1601 were followed, whereas the issue in the instant case involves compliance with the provisions of LSA-R.S. 49:1007. It argues that LSA-R.S. 23:1601(10)(c)(iii)(bb) requires that the employee *707 be given an opportunity to provide medical information relevant to the drug test, but that no such requirement is found in LSA-R.S. 49:1007.
Louisiana Revised Statute 23:1601 details when an individual will be disqualified from receiving unemployment compensation benefits. Subsection 10(a) of LSA-R.S. 23:1601 provides that the employee shall be disqualified from receiving benefits if it is determined that he was discharged for the use of illegal drugs. In meeting its burden of proving the employee's use of illegal drugs, the employer may rely upon results of employer-administered tests only if they are the result of testing done pursuant to a written and promulgated substance abuse rule or policy established by the employer. LSA-R.S. 23:1601(10)(a).
In conducting the drug testing, the employer is required to provide "[a]n opportunity for the employee to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information." LSA-R.S. 23:1601(10)(c)(iii)(bb).
In the unemployment hearing, the administrative law judge determined, pursuant to stipulation by Georgia Gulf, that Sanchez had not been given an opportunity to list any prescription drugs that were in his system that could possibly give a false reading. This finding was essential to its determination that Georgia Gulf had not followed the provisions of LSA-R.S. 23:1601 and thus had failed to prove that Sanchez was disqualified from unemployment benefits pursuant to that statute for use of illegal drugs.
Turning to the statute at issue herein, LSA-R.S. 49:1007(B) requires that the employer's designated MRO shall review all confirmed positive drug test results and report those results to the employer "in compliance with the NIDA guidelines or pursuant to statutory or regulatory authority granted under R.S. 23:1081 et seq. and R.S. 23:1601 et seq." As set forth above, the NIDA guidelines provide that in reviewing and interpreting positive results, the MRO "shall examine alternate medical explanations for any positive test result." 59 Fed.Reg. 29908 § 2.6(b) (1994). Moreover, the NIDA guidelines further provide that the MRO shall give the donor an opportunity to discuss the result with him.[9] 59 Fed.Reg. 29908 § 2.6(c) (1994).
The issue of whether Sanchez was given the opportunity to discuss the results of his drug test and identify any medication or other medical information that may have been relevant to the accuracy of those results was essential to the administrative law judge's determination as to Sanchez's entitlement to unemployment benefits and is likewise an essential issue in the present litigation. However, we need not resolve the issue on this basis.
Pretermitting whether, as Georgia Gulf suggests, the ALJ's findings are entitled to res judicata effect in the instant matter, we find Georgia Gulf is bound by its stipulation in these proceedings that no MRO review occurred and by the attendant legal effects resulting from its stipulation herein.
For these reasons, we find no error in the trial court's judgment, granting Sanchez's motion, or in its conclusion that because MRO review did not occur herein, as required by law, Sanchez was improperly *708 deprived of the opportunity to discuss the results and list any medication or medical condition that may have affected those results. Accordingly, we find no error in the court's conclusion that "[t]he procedures for drug testing Danny Sanchez's random employment urine specimen were not properly followed by the employer Georgia Gulf Corporation."
In sum, we reject Georgia Gulf's argument that its factual stipulation should only apply to its motion for summary judgment. We reject the notion that a party is entitled to limit the legal effect to be given to a stipulation, as urged by Georgia Gulf.
This assignment of error also lacks merit.

CONCLUSION
For the above and foregoing reasons, the portions of the May 16, 2002 judgment of the trial court granting Sanchez's motions for partial summary judgment and res judicata are affirmed. Costs of this appeal are assessed against Georgia Gulf Corporation.
AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although not entirely clear from the record, Sanchez alleges that at the time of the testing, he had been employed by defendant for approximately 26 years, and Georgia Gulf does not dispute this.
[3] Sanchez also named as defendants Kroll Laboratory Specialists, Inc., the company that performed the actual testing and reported the results to Georgia Gulf, and Consolidated Drug Compliance & Management, Inc., the company that administered the test and collected the sample. However, Sanchez later dismissed his claims against these defendants. 
In addition to asserting a claim against Georgia Gulf for wrongful termination, Sanchez also asserted a claim for defamation. However, there are no issues relating to that claim before us in this appeal.
[4] In its motion for summary judgment, Georgia Gulf also sought dismissal of Sanchez's defamation claim, contending that Sanchez could not prove all of the elements of that claim. The trial court granted Georgia Gulf's motion as to the defamation claim and dismissed that claim with prejudice.
[5] In its judgment, the trial court designated both these rulings as final pursuant to LSA-C.C.P. art. 1915(B)(1). With regard to the trial court's ruling denying Georgia Gulf's motion for summary judgment, the correctness of that ruling is also currently pending before this court pursuant to a remand from the Louisiana Supreme Court on Georgia Gulf's writ of supervisory review. While this court had initially denied Georgia Gulf's writ application, the Supreme Court thereafter granted Georgia Gulf's writ application and remanded the matter to this court for a determination of the relationship between the drug-testing statute and the at-will employment doctrine. Sanchez v. Georgia Gulf Corporation, 2002-2198 (La. 11/27/02), 836 So.2d 9.
[6] See 53 Fed.Reg. 11970 (1988). The NIDA Guidelines were later amended in 1994 and 1998. See 59 Fed.Reg. 29908 (1994) and 62 Fed.Reg. 51118 (1998).
[7] Notably, this requirement does not apply to pre-employment drug screening. LSA-R.S. 49:1008(D).
[8] Even in the absence of the above stipulations, we note that it is undisputed in the evidence presented that Sanchez was never contacted by an MRO nor was he given the opportunity to disclose any medications he may have been taking that could have resulted in a false positive test result.
[9] Also, LSA-R.S. 23:1601(10)(c)(iii)(bb), as previously discussed, and LSA-R.S. 23:1081(9)(c)(ii) require that the employee be given an opportunity to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information.