PONDER, Justice.
Appellants appeal from a ruling of the-Civil Service Commission denying their prayer for a return to their employment and' positions with the State Parks and Recreation Commission of the State of Louisiana-.
Both appellants received the following-letter, dated June 4, 1957, from L. A. Talley, Director, State Parks and Recreation. Commission, State of Louisiana:
*256 “Due to the necessity for curtailing expenses at this time, I have been asked by the State Parks and Recreation Commission Board to advise you that your position will be abolished as of July 1, 1957.”
Derr A. Carpenter was classified as a landscape architect and M. G. Munson was classified as an engineer, Class IV.
Carpenter’s petition before the Commission complains that the attempt to abolish his position of landscape architect is null and void because the meeting of the Parks Commission held June 4th lacked a quorum; that a majority of the members of the Commission did not join in the action; that the members who did vote for it were misinformed as to the resources of the Parks Commission; that the work done by appellant and his duties will not be abolished but will have to be performed under some other guise; that the letter of June 4th was ineffective as notice of a “layoff” because it made no offer of a lower classed job; contained no information about accrued annual or sick leave; and no advance notice was given the Department of State Civil Service of the proposed layoff as required by Rule 12.4(a) of the Commission; and the Director of Personnel did not make an order regulating the proposed layoff prior to the letter of June 4, 1957. Alternatively, Carpenter alleges that the layoff was motivated by political pressure on the Director and the Commission to fire its high price personnel, including appellant, and replace them with a large number of low salaried personnel, thus creating a scheme to subvert the Civil Service merit system. Carpenter prays that he be returned to his position with full back pay, interest, attorney’s fees and costs.
Munson’s petition before the Commission requests that he be reinstated to his position as State Parks Engineer Class IV on the grounds, substantially, that his dismissal was based on misinformation as to the financial status of the Parks Commission; that the action was not that of a majority of the members of the Commission and a quorum was not present at this meeting; that his high competitive rating and long service give him the right to first consideration for this indispensable engineering work.
After hearing, the Commission dismissed the two appeals and the plaintiffs have appealed to this Court.
Concisely the contentions to be considered in this Court are:
1. Lack of a quorum at the meeting of the State Parks and Recreation Commission on June 4, 1957.
2. That the resolution abolishing the positions of appellants was adopted under an error fact in that the Director misinformed the board as to the real state of its budget.
3. That proper notice was not given to the Department of Civil Service nor were appellants offered another position as required by Rule 12.4(a).
4. That the action of the Board was motivated by politics.
5. That is was error for the Civil Service Commission to refuse the request of appellants that all members of the State Parks & Recreation Commission be subpoenaed and required to testify.
Appellants urge that under LSA-R.S. 56:1681, as amended by Section 1 of Act 205 of 1956, any eight members of the Commission shall constitute a quorum for the transaction of business and that these members among others include the Register of State Land Office. It was stipulated that the minutes show that Mr. Robert Lacey, State Land Office, Baton Rouge, was present to represent Miss Lucille May Grace, Register of the State Land Office.
It is the contention of the appellants that the minutes of the meeting of June 4th make no explanation as to the reason for the absence of Miss Grace and no proxy was given to Mr. Lacey, hence he was not legally a member of the Board and not au *257 thorized to act, leaving only seven members 'present at the meeting which they contend, therefore, lacked a quorum.
Appellants point out that according to the minutes the motion was made by Mr. Clement to abolish these jobs and that thereafter Mr. Clement excused himself and left the meeting.
Under the provisions of LSA-R.S. 56:-1681, as amended by Section 1 of Act 205 of 1956, any eight members of the Commission shall constitute a quorum for the transaction of business at any general or special meeting. At the meeting of June 4, 1957 seven members participated along with Mr. Lacey of the State Land Office whom it is claimed represented Miss Lucille May Grace. R.S. 41:2.1 (Act 143 of 1952) provides :
“The Register of the State Land Office is hereby authorized to appoint and remove at pleasure an assistant, who in the absence of the register, or in case of the register’s inability to act, or under the register’s direction, shall have authority to perform all the acts and duties of the office.”
It is argued by the appellants that since LSA-R.S. 56:1681 (Act 205 of 1956) provides that the Governor can be represented by his secretary or executive counsel and does not specifically mention this right as having been granted to other ex-officio members such as the Register of Land Office, that the Legislature did not intend to permit them to be represented other than in person. LSA-R.S. 56:1681 must be read in connection with LSA-R.S. 41:2.1 and when these two acts are read together it is obvious that it was the intent of the Legislature to allow the Register of State Land Office to be represented by her assistant according to the plain language of LSA-R.S. 41:2.1.
Next appellants argue that according to minutes of the meeting Mr. Clements moved to adopt the resolution abolishing the positions of appellants and this motion was seconded by Mr. Webster, that thereafter Mr. Clements left the meeting and later an entry shows that the effective date of the abolishment was fixed at July 1, 1957, thus contending that a quorum was not present.
An examination of the record shows that a quorum was present when the resolution was submitted and seconded, which legally abolished the jobs of appellants, the fact that Mr. Clements may or may not have left the meeting, when the effective date of the abolishment was fixed, is of no moment.
The second contention of appellants is that the board adopted the resolution under an error of fact as to the condition of the budget. It is urged by appellee that testimony regarding the budget is irrelevant unless it can be connected with appellants’ charge of discrimination or political motivation. We agree with appellee’s contention and for that reason will pass to the next contention and the testimony regarding the budget will be discussed under the fourth contention that the action of the board was motivated by politics.
The third contention is that proper notice was not given by the Department of Civil Service nor were appellants offered another position as required by Rule 12.4 (d). An examination of this rule reveals that the appointing authority must offer an employee another position if one exists and the appellants have not shown that an equivalent position exists.
As to the question of notice, the Director of the Department of Civil Service testified that he was advised by Mr. Talley that the positions would be abolished and he was written a letter to that effect which he received on June 11, 1957. He testified that he investigated the matter, then wrote acknowledging receipt of the letter and advised Mr. Talley to proceed under the rules in regard to the right of reassignment. According to the record, Mr. Talley so notified the appellants herein. We can find no lack of notice nor noncompliance with the rules.
*258 Under Article 14, Section 15 (J) (2) positions in the Classified service may be abolished by the appointing authority and the appointing authority shall give written notice to the Director of any proposed layoff a reasonable time before the effective date thereof, and the Director shall make such orders relating thereto as he considers necessary to secure compliance with the rules. Under Section 2, Rule XII of the Commission in every case of removal, reduction in pay, layoff, demotion or suspension for a period exceeding thirty days, the appointing authority or his authorized agent shall furnish the employee and the Director, in advance of such action, a statement in writing giving explicit and detailed reasons therefor and shall notify such employee of his right to appeal to the Louisiana Civil Service Commission, etc.
In the present case the board met on June 4, 1957 and voted to abolish the jobs of appellants. According to the testimony adduced, the appellants were notified on this date by letter (dated June 4th) and the Director was also notified. On June 11, 1957, L. A. Talley, Director of the State Parks and Recreation Commission, wrote a letter to the Director of Personnel of the State Department of Civil Service, advising him of the board’s action at the meeting. On June 12, 1957 the Director of Personnel wrote the Director of the Board acknowledging receipt of the letter and stating that he approved the “layoff”. On June 25, 1957 the Director of the Board wrote a letter to each of the appellants informing them that they could ask for their names to be put on the re-employment register of the Civil Service Commission.
It is to be noted that the appellants in preparing the transcript for this appeal did not request that these letters be included and hence only the letters of June 4th, to appellants from the Board, are contained in the record. There is the testimony of the secretary of the board that she wrote to the Director of Personnel on June 4th advising him of the action and sending form SF-1 but no such letter is in the record. According to Mr. McDougall he was notified by letter on June 11, although he had talked to Mr. Talley and knew of the situation.
According to the case of Boucher v. Division of Employment Security, 226 La. 227, 75 So.2d 343 (a case involving removal for cause), the Director of Personnel must be furnished with advance written notice, as required by Section 2 of Rule XII of the Commission, before the appointing authority can notify the employee of his removal.
It seems that if there was any merit to this contention the appellants would have included all documents introduced in the record in the transcript of this appeal and without them the testimony stands that the Director was so notified. These documents were introduced into the record but not brought up.
It is also to be noted that although this contention of appellants deals with lack of the proper notice that they also contend in their brief (and in argument to the Commission) that although the board voted to “abolish” their jobs the letter from the Director calls it “layoff” and that the proper procedure was not followed. They contend that the Director attempted to cure the defect by calling it “layoff”. A reading of the record shows that neither the Director of the Board nor the Board intended to “abolish” the classificátion but simply to abolish the appellants’ jobs thereunder, hence a layoff. There was never any intent to abolish the classifications of these jobs.
The fourth contention is that the action of the Board was motivated by politics. In support of this charge appellants contend that it was misrepresented to the Board that the funds of the Board for the fiscal year 1957-1958 were cut when in truth and fact they were not; that on several occasions Senator B. B. Rayburn and Representative Jesse D. McLain, who are *259 members of the Louisiana Legislature, had urged the Director and the members of the State Parks and Recreation Commission to economize by abolishing jobs, had meddled in the affairs and operations of the Commission, and had issued instructions to the members of the Commission regarding the manner in which their funds should be expended. It is also contended that Representative McLain exerted continuous and heavy pressure on the Director and the Commission to fire its high price personnel including the two appellants herein and replace them with a large number of low salaried personnel, thus spreading employment among the political faithful.
The fifth contention that the Commission erred in refusing to subpoena all members of the State Parks and Recreation Commission at appellants’ request may be considered along with the above contention since it was appellants’ purpose to prove political motivation by these witnesses.
It was the findings of fact by the Commission that:
“Since June 1, 19 new employees have been hired by the Parks Commission, principally in the laboring class. There is no evidence of the employment of anyone to fill the positions that were abolished, nor that any of the appellants would have accepted any of the positions that were filled. There is no evidence upon which to draw a legitimate inference that the action of the Parks Commission was activated by improper political influence or because of the political or religious views or activities of any of the appellants.”
The Commission concluded it would not undertake to review the propriety of action of another board in abolishing certain positions. The fact that there was enough in the budget was of no concern to any one but the Board itself, it must be presumed to have acted within its authority.
On the question of the subpoena of witnesses the Commission held:
“Counsel for three of the appellants filed a request for the issuance of summons to 20 witnesses. He complains that all of his witnesses were not summoned.
“Civil Service Rule 13.21(b) requires that a written application be made for the summoning of witnesses with a brief statement of what is intended to be proved by each, and Rule 13.19(j) authorizes the Commission to limit corroborative testimonial proof. The purpose of these Rules is to prevent the unnecessary disturbance of an inordinate number of State officers and employees. A recalcitrant appellant could disrupt the business of the State by an abuse of the summoning process.
“The application in the instant case discloses that the attendance of from 8 to 15 witnesses was requested to prove the same set of facts. It constituted an abuse of the Rules, and the number of subpoenae was properly limited. The record does not indicate that counsel was deprived of any pertinent evidence because of the absence of any material witness.”
There is certainly no proof in the record of any political motivation.
As to the calling of witnesses appellants rely upon the cases of Dugas v. Ascension Parish School Board, 228 La. 80, 81 So.2d 817 and King v. Department of Public Safety of the State of Louisiana, 234 La. 409, 100 So.2d 217. In the Dugas case the court was convinced that the abolition of plaintiff’s position was not prompted by pure motives but rather that the action was predicated on personal reasons and not in order to effect economy or betterment of the schools. There is no such proof in this record. In the King case, this Court found that it was error for the Commissioner to refuse to hear and *260 consider any evidence tendered to establish appellant’s special averments that his dismissal was founded on political considerations, and not the assigned cause. Therein the Commission did not allow any evidence of such whereas in the present case evidence of this charge was not excluded but in fact heard, the only limitation being on the number of witnesses called to prove the same charge.
Therefore, it is our conclusion that the ruling of the Commission dismissing the appeal of appellants is correct.
For the reasons assigned, the rulings of the Civil Service Commission for the State of Louisiana are affirmed.
HAMITER, J., concurs in the decree.