826 So.2d 23 (2002)
CIVIL SERVICE COMMISSION OF THE CITY OF NEW ORLEANS,
v.
The CITY OF NEW ORLEANS.
No. 2001-CA-0635.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 2002.
Rehearing Denied May 30, 2002.
Writs Granted November 1, 2002.
*24 Gilbert R. Buras, Jr., New Orleans, LA, for Plaintiff/Appellee.
Franz L. Zibilich, Chief Deputy City Attorney, Michael E. Botnick, Deputy City Attorney, Joseph V. DiRosa, Jr., Deputy City Attorney, Mavis S. Early, City Attorney, New Orleans, LA, for Defendant/Appellant, The City of New Orleans.
James R. Swanson, Loretta G. Mince, Joseph C. Peiffer, Correro Fishman Haygood Phelps Walmsley & Casteix, L.L.P., New Orleans, LA, for Defendant/Appellant, SMG Crystal, L.L.C.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER and Judge TERRI F. LOVE).
MIRIAM G. WALTZER, Judge.

STATEMENT OF THE CASE
The Civil Service Commission for the City of New Orleans (Commission) sued the City of New Orleans (City) seeking to *25 enjoin the effect of a management agreement entered into between the City and SMG Crystal, L.L.C. (SMG). The agreement privatized operation of the New Orleans Cultural Center, a city-owned entity comprised of the Municipal Auditorium and the Theater of the Performing Arts.
The trial court issued an order on 6 November 2000 setting the preliminary injunction for trial, which order was served on the City.
The City filed an exception of failure to join SMG as a party defendant and alleged the City had not been cited and served at least two days before hearing as required by LSA-C.C.P. arts. 1265 and 3602. On 21 November 2000, the trial court entered judgment granting the non-joinder exception and ordering the Commission to add SMG as a party defendant.
The Commission added SMG by first supplemental and amending petition, requesting service on the City and on SMG. The City answered on 28 November 2000, generally denying the Commission's allegations and asserting in defense the alleged unconstitutionality of Rule III, Sections 6.1 through 6.4 of the Commission's rules. The City Attorney certified that he sent a copy of the City's answer to the Attorney General for the State of Louisiana. On 29 November 2000, the City filed an exception of insufficient service to the supplemental and amending petition.
The trial court ordered the matter to be submitted upon verified pleadings, affidavits and oral arguments only. However, testimony was taken at the trial on 30 November 2000.
The trial court rendered judgment in favor of the Commission on 8 December 2000 enjoining the City, its Property Management Department and SMG (1) from discharging any SMG employee formerly employed by the City without approval of the Commission until the Commission has approved the SMG contract; (2) from transferring any employee employed at the Cultural Center absent Commission approval until the Commission has approved the SMG contract; and (3) from executing any other contracts for services to be performed at or for the Cultural Center absent Commission approval during pendency of this action. From that judgment the City and SMG appeal. We affirm.

RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS
Both the Civil Service System and the New Orleans Home Rule government system are creatures of the Louisiana Constitution.
The city civil service is established and includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof.... La. Const. Art. 10, § 1.(B).
Each commission is vested with broad and general rulemaking ... powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established.... La. Const. Art. 10, § 10(A)(1).
Section 8 of the Home Rule Charter provides for the Civil Service Commission and reaffirms the constitutional grant of *26 authority. Section 8-103(2)(i) provides in pertinent part that the Commission shall:
Be vested with broad and general rule-making ... powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, layoffs, compensation and disbursements to employees and other personnel matters and transactions; ... and generally to accomplish the objectives and purposes of the merit system of civil service as herein established....
Section 8-104(10) gives the Director of Civil Service the right to examine each department's payroll to ascertain if its employees have been appointed and are being compensated in accordance with the provisions of the Charter.
Acting pursuant to its authority under the state constitution and the New Orleans Home Rule Charter, the Commission enacted Rule III, Section 6 CONTRACTS, which provides in pertinent part:
6.1 All contracts for personal or professional services, ... shall be reviewed and approved by the Director well in advance of their effective dates, to insure compliance with the Civil Service Law and to determine whether such services should be provided within the classified service. Such contracts shall become effective only when approved by the Director....
6.2 Contracts for personal or professional services ... shall be approved only when such services require unique or specialized skills not presently required of positions in the classified service....
6.3 All contracts for personal or professional services ... first shall be transmitted to the Civil Service Department for initial consideration and review, and again for final approval after all other aspects of contractual review have been completed....
6.4 The prior provisions of this Rule notwithstanding, if due to fiscal restraints or some other cause it becomes necessary to privatize either a traditional governmental function or one unique to the City which has been performed by classified employees, or to privatize an existing ... organization unit of city government which is or could be staffed by classified city employees, no action or decision toward this end by any agency of the City, State, or parish of Orleans shall become binding and effective until approved by the City Civil Service Commission, subject to the following conditions:
(a) Any contract for privatization of a governmental service shall contain a provision that thoroughly explains the effects of privatization on the status of current employees, as well as any specific contractual commitments entered into by the parties, which affect the interests of the displaced employees.
(b) Any contract for privatization of a governmental service shall contain an additional provision which has the effect of prohibiting unlawful discriminatory treatment of employees.
(c) Any contract for privatization of a governmental service shall contain an additional provision which affords regular employees an opportunity for a full and fair hearing prior to any disciplinary action.
(d) Employees who choose to remain in the classified service of the City may request the City Civil Service Commission to invoke the application of Rule XII, Layoffs, in order to preserve their classified status.

*27 * * *
(f) A copy of the proposed contract, and such other evidence to be presented to the Commission to justify the necessity for privatization, shall be reviewed with the Commission at a public meeting. The Commission shall not approve the contract prior to a subsequent meeting, with due notice given to the public of the proposed provisions of the privatization contract. Due notice shall include individual notification to affected employees.
The City and SMG contend that these rules violate Article 6, § 6 of the Louisiana Constitution which provides:
The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
Section 9(B) of the same Article 6 provides:
Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
The Home Rule Charter provides:
Section 2-101. Powers
(1) The City shall retain, to the same extent as if herein repeated, all rights, powers, privileges and authority that it has or could claim under the law of this State at the time of the adoption hereof, except as herein expressly modified.
(2) In addition to the foregoing, the City shall have all rights, powers, privileges and authority herein conferred or herein enlarged and all rights, powers, privileges and authority whether expressed or implied that may hereafter be granted to a similar corporation by any general law of the State or that may be necessary or useful to enjoy a home rule charter.
* * *
The City, in addition to the rights, powers, privileges and authority expressly conferred upon it by this Charter, shall have the right, power, privilege and authority to ... do and perform all of the acts pertaining to its ... property... which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions.
* * *
(6) The rights, powers, privileges and authority of the City of New Orleans under this Charter shall be construed liberally in order to establish the broadest measure of local self-government in any and all matters not prohibited or reserved to the state by the Louisiana Constitution.
Section 3-118. Adoption of Pay Plans
All persons employed by the City ... and paid either in part or in whole from appropriations made by the Council, ... shall be compensated only in accordance with pay plans adopted by the Council. The pay plan for those persons in the classified service shall be in accordance with the prevailing provisions of the civil service law and the rules and regulations adopted thereunder....
Section 4-102 Organization [of Executive Branch]
The Executive Branch shall consist of the Office of Mayor, of which the Mayor shall be the head; the Administrative Office, of which the Chief Administrative Officer shall be the head; the department heads; ...; and the following departments and boards; all of which are hereby created and established or continued and recognized:

*28 (1) Departments
* * *
Department of Property Management
Section 4-302 mandates that the Chief Administrative Officer shall supervise and appoint, with the Mayor's approval, the heads of all departments except the Law Department and City Civil Service.
Section 4-1401. Functions [of Department of Property Management]
The Department of Property management,... shall:
(1) Maintain all buildings owned or operated by the City for a public purpose and perform all custodial functions in connection therewith; ...
* * *
(5) Award all concessions on City property subject to requirements which may be imposed by ordinance.
* * *
The Home Rule Charter does not address specifically the issue of privatization of otherwise traditional governmental functions.
FIRST AND SECOND ASSIGNMENTS OF ERROR: Rule III, Sections 6.1 through 6.4 of the Rules of the Civil Service Commission of the City of New Orleans are unconstitutional as said rules are beyond the scope of the Commission's jurisdiction as established by the Louisiana Constitution of 1974; Rule III, Sections 6/1 through 6.4 of the Rules of the Civil Service Commission of the City of New Orleans are unconstitutional as said rules abrogate the powers and duties granted to unclassified officials of the City of New Orleans pursuant to the City's Home Rule Charter.
The Louisiana Supreme Court has made clear that the Commission's rules have the effect of law. Sanders v. Department of Health and Human Resources, 388 So.2d 768, 770 (La.1980); La. Const. art. 10, § 10(A)(4). See also, Bannister v. Department of Streets, 95-0404 p. 5 (La.1/16/96), 666 So.2d 641, 645; Paul v. New Orleans Police Department, 96-1441 p. 6 (La.App. 4 Cir. 1/15/97), 687 So.2d 589, 592. Furthermore, the provisions of the constitution involving civil service and the Commission's rules are designed to secure adequate protection to public career employees from political discrimination. They embrace the merit system. Their intent is to preclude favoritism and their purpose is to guarantee the security and welfare of public service. Sanders, 388 So.2d at 771.
The constitutional grant of rule-making power to the Commission precludes the legislature from enacting a statute that would nullify a Commission rule. See, Smith v. Department of Health and Human Resources, 416 So.2d 94, 96 (La.1982), where the Louisiana Supreme Court held that the Administrative Procedure Act could not supersede Civil Service Rule 13.33(b).
While Commission rules have the force of law, they may not violate established, basic constitutional rights. For example, the rules may not abrogate an employee's constitutional right to due process or to appeal. See, Guillory v. State Dept. of Institutions, La. State Penitentiary, 219 So.2d 282, 286 (La.App. 1 Cir.1969); Marullo v. New Orleans Police Department, 183 So.2d 431 (La.App. 4 Cir.1966). The City makes no allegation of denial of due process in the instant case.
This case is not the first in which a conflict arose between the city administration and the Commission. In Civil Service Commission of City of New Orleans v. *29 Rochon, 374 So.2d 164 (La.App. 4 Cir. 1979), the city's chief administrative officer sought to alter methods of compensation and disbursements to classified city civil service employees by changing the method of computing overtime pay. The city argued that the chief administrative officer could make these modifications pursuant to Section 4-302(5) of the New Orleans Home Rule Charter which conferred on him the authority to "prescribe accepted standards of administrative practice to be followed by all offices, departments and boards." This Court summarily dismissed the city's argument, holding that "[T]he Chief Administrative Officer of the City of New Orleans has no authority under law to independently alter methods of compensation and disbursements to civil service employees of the city as set by the Commission." Rochon, 374 So.2d at 166. Citing La. Const. Art. 10, § 10(A)(1), the Court rejected the city's charter-based argument.
The scope of the Commission's rulemaking authority and the standard by which we as a reviewing court should interpret those rules were set forth cogently in New Orleans Firefighters Ass'n Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172, 1174-75 (La.1991)[1]:
The Louisiana Constitution has contained detailed provisions for the state and city civil service systems since 1952. The principal objectives of the civil service system are to select and promote public employees competitively on the basis of merit, fitness and qualifications, to secure the tenure of public employees, and to protect public employees against discrimination, intimidation or dismissal because of political or religious beliefs, sex, race or other unjustified reasons. The Projet [of a state constitution, ed.1954] noted that the primary function of the state and city civil service commissions in Louisiana is to "see to it that the rank and file of state and city employees are selected competitively on the basis of merit, free from political influence" and to "see that these employees are protected from dismissal or discriminatory treatment because of religious or political reasons."
In order to achieve these objectives, La. Const. art. X, § 10(A)(1) grants broad and general rulemaking powers to the state and city civil service commissions to regulate the classified service,....
The rules adopted by a civil service commission pursuant to this authority "have the effect of law," ...
Thus, a city civil service commission has the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1), and the city governing authority cannot constitutionally infringe on the commission's exercise of this power. Moreover, the convention debates surrounding the adoption of Section 10(A)(1) indicated an intent that this provision should be construed liberally in favor of fulfilling the goals of civil service. [Emphasis added; citations omitted.]
The rule of liberal construction favoring the objectives and goals of civil service's merit system was repeated in Paul, supra, and in Reimer v. Medical Center of Louisiana at New Orleans, 95-2799 (La.App. 4 Cir. 1/29/97), 688 So.2d 165, 168.
In the Firefighters case, the court held that the power to impose residency requirements did not fall within the Commission's *30 constitutional authority. The court employed the following analysis:
Of the specific areas of power enumerated in Section 10(A)(1), "employment" refers in context to the selection and hiring of employees, and "promotion" and "demotion" refer to the raising or lowering in position of employees after employment. The power to adopt a residency requirement does not fall within the commission's express powers to adopt rules regulating the selection, hiring, promotion or demotion of public employees on the basis of merit. Moreover, as to the objectives of civil service, a residency requirement is unrelated to the competitive selection and promotion of public employees on the basis of merit, fitness and qualifications. Firefighters, 590 So.2d at 1176.
Applying that analysis, it is clear that in the instant case, the Commission's rules on privatization contracts relate immediately to the selection, hiring, promotion and demotion of public employees. The employees covered by the rules were classified civil service employees, working for the city's Department of Property Management. The rules protect these classified employees from an administration that would use privatization as a means of eliminating civil service protection of the employees and defeating the objectives of providing for selection, hiring, promotion and demotion on the basis of merit.
"Suspension" refers to the temporary removal of a public employee from service, and "removal" refers to the permanent separation from employment. The power to adopt a residency requirement does not fall within a commission's express power to adopt rules regulating the suspension and removal of public employees.... A residency requirement is not pertinent to the prohibition against subjecting a permanent employee to disciplinary action except for cause. Id.

Again, the Commission's privatization rules fall within the Commission's express power to adopt rules regulating suspension and removal of public employees. Rule 6.4 particularly addresses the interests of employees displaced by privatization and is consistent with the Commission's authority and with the objectives of the civil service system. These rules are related clearly to the selection and promotion of public employees on the basis of merit, fitness and qualifications, to the security of tenure of public employees, and to the protection of the employees against political, religious, racial, gender or similar discrimination or intimidation. See, Firefighters, 590 So.2d at 1177.
For the foregoing reasons, it is evident that the privatization rules are squarely within the constitutional authority granted to the Commission and to the authority granted to the Commission by the New Orleans Home Rule Charter. The interpretation of the Charter suggested by the City unnecessarily creates a conflict between the Commission's authority and that of the Mayor. We do not read the Charter's provisions concerning mayoral authority to be as broad as the City would suggest. The power of the Mayor's Office under the Home Rule Charter must not be extended to circumvent the merit system for public employees by executing management contracts "privatizing" governmental functions. The Commission's Rules at issue herein are clearly and unequivocally within the scope of the Commission's constitutional and Chartered authority and serve to achieve the goals and objectives of the merit system of public employment. *31 Therefore, these assignments of error have no merit.
THIRD ASSIGNMENT OF ERROR: In the event these rules are constitutional, they are inapplicable to the management services contract entered into by and between the City and SMG Crystal, L.L.C.
The City's alternative argument that the SMG contract is not for personal or professional services and is not a privatization agreement is disingenuous. The Department of Property Management's operation of the "Cultural Center" requires rendition of personal and, it may be argued, professional services, by SMG as manager and by the classified employees in their respective positions. The trial court was not persuaded by the testimony of SMG's regional general manager, Doug Thornton, or the City's chief administrative officer, Cedric Grant, and its Director of Property Management, Kerry DeCay, that the management agreement somehow does not rise to the level of privatization because the City retained ownership of the property in question. This begs the question of whether the management of the center is or is not "privatized." While the term "privatize" is not defined specifically, it is clear from the rule that when a formerly traditional governmental function (for example, management of government property) is contracted to a non-governmental or "private" entity, the Rules become effective.
We do not accept the City's invitation to put classified employees at risk merely in order to subscribe to a tortured interpretation of the term "privatize."
This assignment of error is without merit.
FOURTH ASSIGNMENT OF ERROR[2]: The preliminary injunction entered by the trial court enjoining SMG from terminating certain of its employees absent Civil Service Commission approval must be vacated because the Commission is not entitled to this relief.
SMG in brief spills much ink extolling its outstanding record of performance in other cities, calling attention to the City's alleged budgetary crisis and promising alleviation of the "crisis" by its superior management skills. However, none of these allegations, even if true, are relevant to the issue of the propriety of the Commission's rules concerning protection of classified city workers impacted by privatization. Whether or not SMG can or will solve the City's alleged budgetary crisis is an issue for another day and another forum.
SMG argues that the preliminary injunction enjoining SMG from discharging any former city employees without Commission approval must be vacated because the Commission did not show that is was entitled to this injunctive relief. SMG contends that since some former city employees resigned their city positions to work for SMG, they are no longer under the Commission's jurisdiction. This argument ignores the fact that, in reality, these employees had no real choice if they intended to continue to do the work they had been doing on behalf of the "Cultural Center." Acceptance of SMG's argument effectively would eviscerate the Commission's rules, designed to achieve the objectives of the merit system and to protect the center's classified employees in the event of privatization.
This assignment of error is without merit.

*32 CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against the appellants.
AFFIRMED.
LOVE, J., Dissenting with Reasons.
This appeal involves a significant issue of first impression in the State of Louisiana: the delineation of powers between two constitutionally-sanctioned public entities; namely, the City of New Orleans, a pre-1974 Constitution home rule charter governing authority, and the Civil Service Commission of the City of New Orleans. Although related issues have been decided previously that lend guidance to the instant matter, the precise question presented to the Court by this appeal has not been squarely addressed heretofore, but is a matter of great importance in these days of economic uncertainty and the attendant need for public bodies to govern efficiently and cost-effectively.
The majority opinion reasons that because the Commission has the power, under the State Constitution and interpretive jurisprudence, to regulate the City's classified service, the instant Rule III must be upheld as a valid exercise of the Commission's rulemaking power. The majority fails, however, to analyze thoroughly the issue of conflicting, constitutional powers of the Commission and the City. Although the majority correctly reasons that both entities' authority emanates from the State Constitution, the opinion falls short of analyzing the constitutional aspect of the conflict between the City's powers as a preexisting (i.e., pre-1974 Constitution) home rule charter governing authority and the Commission's powers to regulate the classified service within the City of New Orleans.
The broadest power for self-government is constitutionally guaranteed to home rule charter cities and jurisprudence abounds holding that undue interference with that power is prohibited by the state and other entities. Although the Commission has been granted "broad and general rulemaking" powers under the Constitution as well, the Constitution specifically enumerates the types of employment functions the Commission is empowered to govern with its rules, and the instant case presents a situation where the Commission has overstepped its jurisdiction, as the Louisiana Supreme Court has held in a number of other instances over the past two decades.
The critical issue that the majority failed to address is whether the Commission, by enacting Rule III that requires the advance review and approval of all City privatization contracts, has regulated beyond its jurisdiction. If that constitutional analysis is conducted, I believe the correct answer is that Rule III is unconstitutional because it improperly breaches the separation of powers doctrine enunciated in the Constitution, art. II, § 2 by regulating an area that is reserved to the City under it broad, home rule charter authority. Therefore, for reasons more fully explained below, I respectfully dissent from the majority opinion.
The City appeals the district court's judgment in favor of the Commission enjoining the City and SMG Crystal, L.L.C. ("SMG") from the continued performance of a management agreement entered into by those two parties for SMG to provide management, operations, and marketing services at the New Orleans Cultural Center.[1]
*33 Prior to the agreement, the center employed 19 city employees all of whom were offered transfers within the Department of Property Management when the contract for private management services was considered. Ten employees of the 19 chose to resign and become employees in the private sector with SMG, still working at the Cultural Center. The nine remaining employees remained in the City's Department of Property Management, although they began working in other facilities.
Also prior to the agreement with SMG, the Cultural Center ran an annual deficit of approximately $915,000.00, while the agreement with SMG was entered for $175,000.00 per year plus an incentive fee based on the annual reduction it accomplishes in operating deficit. Additionally, the agreement requires SMG to spend $25,000.00 per year to market the facilities.
The Civil Service Commission sought a permanent injunction declaring the agreement void ab initio and prohibiting the implementation of the contract until it had been submitted and approved by the Commission pursuant to Rule III, Section 6.1-6.4 of the Rules of the Civil Service Commission of the City of New Orleans, which requires approval of the Commission of any privatization contract.
Civil Service Rule III, §§ 6.1 through 6.3 address contracts for personal or professional services. Section 6.4 concerns the privatization of units of city government. These rules provide as follows:
6.1 All contracts for personal and professional services, and amendments thereto, shall be reviewed and approved by the Director well in advance of their effective dates to insure compliance with the Civil Service Law and to determine whether such services should be provided within the classified service. Such contracts shall become effective only when approved by the Director. When so approved, they may thereafter continue for a period not to exceed one (1) year from the effective date of the contract.
6.2 Contracts for personal or professional services ... shall be approved only when such services require unique or specialized skills not presently required of positions in the classified service...
6.3 All contracts for personal or professional services ... first shall be transmitted to the Civil Service Department for initial consideration and review, and again for final approval after all other aspects of contractual review have been completed ...
6.4 The prior provisions of this Rule notwithstanding, if due to fiscal restraints or some other cause it becomes necessary to privatize either a traditional governmental function or one unique to the City which has been performed by classified employees, or to privatize an existing or newly established organization unit of city government which is or could be staffed by classified city employees, no action or decision toward this end by any agency of the City, State, or parish of Orleans shall become binding and effective unit approved by the City Civil Service Commission, subject to the following conditions:....
In response to the Commission's action, the City challenged the constitutionality of the rules at issue, asserting that they were beyond the scope of the Commission's constitutional *34 powers and that they infringed on the City's constitutionally-granted powers, especially because the City of New Orleans is a pre-1974 Louisiana Constitution Home Rule Charter entity, which gives it the broadest powers of self-government under the 1974 Constitution.
The district court heard evidence at the Commission's preliminary injunction hearing and rendered judgment (1) enjoining SMG from discharging any employee formerly employed by the City without approval of the Civil Service Commission until the Commission approves the contract between the City and SMG; (2) enjoining the City from transferring any employee employed at the center absent Commission approval, and (3) enjoining the City during the pendency of this action from executing any other contracts for services at the center without approval of the Commission. It is from this judgment, issued December 8, 2000, that the City now appeals.

Analysis
The Commission argues that the rules in question, which require the Commission's review and approval of any contracts for personal or professional services or privatizations of governmental functions entered into by the City of New Orleans, are legitimate exercises of its Constitutional duty, as granted in the above article. The Commission states that this power is exercised "in order to determine the effect of such contracts upon the classified civil service workforce and in order to preserve [the] system of civil service for which the Commission has charge."[2]
In support of its position, the Commission relies upon a First Circuit case, Jack A. Parker & Assoc., Inc. v. State Through Dep't of Civil Service, 454 So.2d 162 (La. App. 1st Cir.1984), where a contractor for the provision of professional services to organize and maintain the state group insurance program brought a breach of contract action against the State after the State Civil Service Commission refused to approve its contract with the State. The lack of approval was based upon State Civil Service Rule 3.1(o), which provided that the director of civil service shall:
Review and approve or disapprove, in advance of their effective dates, contracts for personal services between the State, or any instrumentality thereof, and any person in order to insure that such agreements do not provide for the performance of such services for the State of Louisiana which could and should be performed by classified employees.
In declaring the contract void, the First Circuit determined that Parker's "failure to comply with Rule 3.1(o) defeats the purpose of the civil service laws." The court reasoned that the requirement of advance approval by the director was necessary for the protection of classified employees and "[i]f approval of such contracts between the state and proposed independent contractors was not required, state officials could easily circumvent the reasons for establishing the Civil Service Commission...." Id. at 167.
On the other hand, the City asserts that the civil service rules at issue in the instant case are unconstitutional because they are beyond the scope of the Commission's jurisdiction as set forth by the Louisiana Constitution. Although Article X, § 10(A)(1) of the Constitution grants the Commission exclusive constitutional power to regulate the classified service, the Commission power does not include a right to limit the City's power to contract pursuant to its authority under the Constitution and *35 the City's Home Rule Charter.[3] Therefore, the Commission may not infringe upon the City's constitutional right to enter into contracts that the City's executive branch deems fiscally imperative.
Additionally, the City posits that a home rule charter government possesses, relative to local affairs, powers that are as broad as those of the State, except when limited by the Constitution, laws permitted by the Constitution, or its own home rule charter. La. Const., art. VI, §§ 4, 5. Moreover, the Constitution itself specifically prohibits interference with home rule charter governmental powers:
The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
La. Const., art. VI, § 6.
The City argues additionally that the First Circuit case, Jack A. Parker & Assoc., Inc. v. State Through Dep't of Civil Service, 454 So.2d 162 (La.App. 1st Cir. 1984), is inapposite to the analysis of the instant case, as well as not being mandatory authority. In Parker, the State and the Commission were aligned in opposing Parker's contract. Thus, the issue of the conflicting balance of power between the (State) civil service commission and the State was never briefed or addressed by the court. That issue, albeit as regards to the City of New Orleans vis ā vis the Civil Service Commission of the City of New Orleans, is presented squarely by the instant case and must be analyzed where both entities' powers and functions flow directly from the state constitution, but are in conflict.
The Louisiana Supreme Court articulated the broad powers of a home rule charter government in Francis v. Morial, 455 So.2d 1168 (La.1984), where then Justice Dennis, writing for the majority, stated the issue in that review as:
We are called upon to decide whether an act of the legislature altering the procedure for selecting members of a home rule municipality's administrative board should be upheld as necessary to prevent abridgement of a reasonable exercise of the state's police power or stricken as an interference with local deployment of home rule charter powers and functions prohibited by the state constitution.
Upon motion of the New Orleans Aviation Board, the trial court had declared the statute affecting New Orleans unconstitutional and enjoined its enforcement. The supreme court affirmed, explaining that:
Section 6[of La. Const. art. VI] was added to the local government article to protect home rule charter governments from unwarrantable interference in their internal affairs by state government. It is clear from the convention proceedings and the words of Section 6 that it was intended to prevent the legislature from substituting its judgment for that of the home rule government with respect to the arrangement of the various offices, departments, agencies and elements of the local government, and as to the assignment, allocation or distribution of purposes, work, authority and capacities among them. Unless the constitution elsewhere provides justification for such *36 an intrusion, any state law which changes or affects, i.e., produces an alteration in or material influence upon, the local government's structure and organization or the distribution or redistribution of its powers is prohibited.
Francis, 455 So.2d at 1171-72 (citing VII Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 1341, 1361; other citations omitted).
Later in that same opinion, Justice Dennis also cautioned that:

Home rule abilities and immunities are bestowed by the constitution in terms too full and general to warrant narrow construction of them by the courts. ... This transformation in the constitutional philosophy of local government calls for a corresponding adjustment in the judicial attitude toward home rule prerogatives.... Hence, it is appropriate that home rule powers, functions and immunities should be construed fairly, genuinely and reasonably and any claimed exception to them should be given careful scrutiny by the courts.

Francis, 455 So.2d at 1173 (emphasis added).
The Louisiana Supreme Court recently considered an issue analogous to the instant case concerning conflicting powers in Louisiana Dep't of Agriculture and Forestry v. Sumrall, 98-1587 (La.3/2/99), 728 So.2d 1254, where Justice Kimball, writing for the majority, analyzed a rule promulgated by the State Civil Service Commission that afforded a classified employee the right to administrative appeal on claims of discrimination based on grounds that were not specifically listed in the Louisiana Constitution, art. X, § 8B. The First Circuit had held in favor of the Commission, finding that under its "broad and general" rule-making power, it had the authority to expand on the types of discrimination that warranted appeals. The supreme court reversed, holding that the Commission's rules in question were unconstitutional because they were in conflict with the separation of powers doctrine set forth in the Louisiana Constitution, art. II, § 2, which prohibits any branch of government or representative thereof to exercise the powers belonging to another. See Sumrall, 728 So.2d at 1263.
In arriving at the decision, the court utilized the two-part analysis developed in New Orleans Firefighters Ass'n v. Civil Service Comm'n of the City of New Orleans, 422 So.2d 402, 411 (La.1982) ("Firefighters I") and New Orleans Firefighters Ass'n Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La.1991) ("Firefighters II"): (1) whether the rule in question falls within an area specifically enumerated in Article X, § 10(A)(1); and (2) whether it is necessary for the Commission to have the power to enact the rules in question to effectuate the objectives and purposes of the civil service. Sumrall, 728 So.2d at 1261-62.
Applying the first prong of the above two-part test to assess the constitutionality of the Commission Rule III in the instant case, we look to La. Const. art. X, § 10(A)(1) to determine whether the rule falls within the expressly enumerated powers enunciated therein. Article X, § 10 provides in pertinent part:
(A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a *37 uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.
Although the above article expressly authorizes the Commission to regulate the classified service, e.g., promotions, demotions, certifications, etc., the constitution does not specifically authorize the Commission to adopt rules to regulate all employment contracts entered into by the City. The City points out that in terms of layoffs, for example, La. Const., art. X, § 10(A)(3) demonstrates the framers' intent to give the Commission merely a ministerial role in decision-making that results from fiscal necessities of administering the City's budget for its employees. Section 10(A)(3) sets forth that the Commission may determine the procedures for effecting layoffs, but the decision to execute the layoffs is a fiscal and business decision that belongs to the City, not to the Commission, as long as there is no discriminatory intent or political motivation associated with the layoff.
The City argues that this decision by the framers of the Constitution not to grant the Commission the power to prevent, affect, or even to review proposed layoffs is significant because there is no greater action that can affect the classified service employees than layoffs of classified employees. In the instant situation, for example, the City could sell or lease the Cultural Center buildings, or any of its other properties, and such action might well result in the layoffs of many classified employees. If that action were taken, the Commission would have no power whatsoever to restrict or prevent the sale or lease of such property despite the dire results to many civil servants. Jurisprudence of this State reinforces this interpretation of the pertinent constitutional article. See, e.g., Munson v. State Parks and Recreation Comm'n, 235 La. 652, 105 So.2d 254, 259 (1958) (involving civil service employees' attempts to return to their positions that had been abolished by the Parks Commission where the court concluded that "[t]here is no evidence upon which to draw a legitimate inference that the action of the Parks Commission was activated by improper political influence or because of the political or religious views or activities of any of the appellants."); Heno v. Department of Labor, 171 So.2d 270 (La.App. 1st Cir.1965) (where the court held that much discretion is given an appointing authority in determining which employees shall be affected by layoffs); Casse v. Sumrall, 547 So.2d 1381, 1387 (La.App. 1st Cir.1989) ("It is significant that the layoff plan at issue was formulated on the basis of administrative decisions which were made after careful review of the needs and priorities of the department involved and not upon the performance of individual employees.").
As the supreme court explained in Sumrall, 728 So.2d 1254, "the Commission's authority to enact rules, though it be broad and general, is nonetheless limited by the terms expressed in the constitution itself." Id. at 1261 (emphasis added). The court decided in that case that it had extensively reviewed Article X, § 10(A)(1) in Firefighters II and determined that the words expressly mentioned in section 10, e.g., "employment," "promotion," "demotion," etc., did not warrant "the Commission's authority to enact rules expanding its appellate jurisdiction to claims beyond that which the constitution has already bestowed." Sumrall, 728 So.2d at 1262.
*38 The court in Sumrall continued to examine the last phrase in the enumerated powers listed in Section 10: "other personnel matters and transactions." Justice Kimball clarified:
However, when this phrase is read in the context of the article, it is clear that the language was added to allow the Commission some flexibility in rulemaking with respect to administration of personnel. This phrase pertains to personnel management rather than to the jurisdiction of the Commission. We find nothing in Section 10 which could serve as an authorization for the Commission to expand its jurisdiction.
Sumrall, 728 So.2d at 1262.
Thus, the court concluded that under the first step of the analysis for constitutionality, the state civil service rules were unsupportable and I conclude the same. The City Civil Service Rule III, §§ 6.1-6.4, which rules require the Commission's review and approval of any contracts for personal or professional services or privatization of governmental functions entered into by the City of New Orleans, are not specifically enumerated under Article X, § 10(A)(1). The Commission's power to regulate classified employees is, as the court in Sumrall explained, limited by the terms expressed in the Constitution itself.
Turning now to the second step of the analysis, as the court did in Sumrall, the inquiry is whether it is necessary for the Commission to have the power to enact the rules in question to effectuate the objectives and purposes of the civil service. A review of the previous cases where this question was presented is helpful in determining the answer in the instant matter.
In Firefighters I, the supreme court concluded that "it was not necessary for the Civil Service Commission of the City of New Orleans to have power to modify statewide minimum wage levels established by the Legislature in order to adopt a uniform pay and classification plan for the City or to achieve the civil service objectives of safeguarding merit selection and promotion, protecting against discriminatory dismissal, and safeguarding public employees from political influence or reprisal." Firefighters II, 590 So.2d at 1176 (citing Firefighters I, supra, at 411). Additionally, in Firefighters II, the court concluded that:
Neither is it necessary in this case for the Civil Service Commission of the City of New Orleans to have the exclusive power to adopt domiciliary or residency requirements in order to achieve generally the principal objectives of civil service. A residency requirement is unrelated to the selection and promotion of public employees on the basis of merit, fitness and qualifications, to the security of tenure of public employees, or to the protection of public employees against political, religious, racial, gender or similar discrimination or intimidation.
Firefighters II, 590 So.2d at 1177.
Finally, after reviewing the analyses in both of the Firefighters cases, the court in Sumrall concluded similarly, holding that "it is unnecessary for the Commission to have the power to enact rules expanding its jurisdiction in order to achieve the goals and principal objectives of the civil service." Sumrall, 728 So.2d at 1262. The court reasoned that the civil service provisions in the constitution are "designed to protect public career employees from political discrimination by eliminating the `spoils system.'" Id. (citing La. Const. art. X, § 1, et seq.). Further, the court found that the rules at issue in Sumrall were in conflict with La. Const. art. II, § 2, which provides for the separation of powers between the three branches of government.
*39 Applying the above supreme court analysis to the instant case, the rules in question, i.e., Rule III, §§ 6.1-6.4 of the Civil Service Commission of the City of New Orleans, constitute an unwarranted expansion of the Commission's jurisdiction. These rules, as the supreme court found in the above cases involving conflicts of power, are not necessary for the City Civil Service Commission to achieve its principal objectives of regulating employment of classified employees and protecting them from discriminatory employment actions. Therefore, under the second step of the analysis for constitutionality, the civil service rules in question are not authorized where they conflict with the City's ability to contract.
The constitutionally-granted authority that flows to the City as a pre-existing home rule charter governing body (i.e., pre-existing the 1974 Constitution) underlies the City's freedom to contract for the management of its property as one of the fundamental aspects of its deployment of its powers and functions. The executive branch must be free to run the City in a fiscally-responsible manner as it has done in the instant situation where thousands of dollars would be saved each year by the implementation of the current contract with SMGâ dollars that could be devoted to other essential priorities of City government. This freedom to contract belongs to the executive branch, and its pertinent departments, as authorized by the Constitution under the broad governing powers of a pre-existing home rule charter entity, and such freedom must be protected from undue interference as the above jurisprudence demonstrates.
Therefore, I respectfully dissent from the majority opinion and would find that Rule III of the Civil Service Commission of the City of New Orleans is unconstitutional because it conflicts with the powers of the pre-existing home rule charter governing authority, the City of New Orleans. I would reverse the district court's judgment in favor of the Commission and dismiss the Commission's case.
NOTES
[1] Certain "grandfather" clauses in the residency ordinance were held to have violated the equal protection provisions of the Louisiana and United States Constitutions in Police Ass'n of New Orleans v. City of New Orleans, 94-1078 (La.1/17/95), 649 So.2d 951.
[2] This error is assigned only by SMG Crystal, L.L.C.
[1] The Cultural Center is city-owned and comprised of two buildings: the Morris F.X. Jeff Municipal Auditorium and the Mahalia Jackson Theater of Performing Arts. SMG is an international theater and arena management company, currently operating the state-owned Superdome, the New Orleans Arena, and the City of Baton Rouge Centroplex. The contract resulted from the City's July 1, 1999 Request for Proposals to provide management services at the Cultural Center, and was to become effective on October 1, 2000.
[2] Original Appellee Brief, at page 1.
[3] The Home Rule Charter unambiguously provides the mayor with authority to contract on behalf of the City under Section 6-308. Additionally, the Charter's grant of authority to the Department of Property Management to "manage ... all immovable property in which the City has an interest ... by contract, or by ordinance" is set forth in Section 4-1401(2).