I PATRICIA RIVET MURRAY, Judge.
This is an action for declaratory and injunctive relief. The Civil Service Commission of the City of New Orleans (the Commission) commenced this action against the City of New Orleans (the City) and the Office of the Civil Sheriff (Sheriff) seeking to enjoin them from operating under the terms of a Cooperative Endeavor Agreement (the Agreement) and seeking a declaration that the Agreement was invalid. The City and the Sheriff responded by filing various exceptions. From a judgment sustaining the exceptions and denying injunctive relief, the Commission appeals. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

Since 1995, the Sheriffs deputies have provided security services at various public buildings in the City of New Orleans under yearly contractual agreements with the City. The security services provided by the Sheriffs deputies, who are unclassified employees, are the same as those provided by the City’s Ground Patrol Officers (GPO), who are classified employees.
In late 1995, the GPO lodged a complaint with the Commission regarding, among other things, the City depriving them of overtime opportunities by using the Sheriffs deputies to discharge duties assigned to them. The GPO also complained|gthat while the City apparently had placed a freeze on hiring new classified employees for GPO positions, the Sheriff was hiring additional deputies to work in City buildings performing the duties of the GPO. Responding to the complaint, the City indicated that the Sheriffs deputies were merely “complementing] the City’s Classified Employees for building security” and that “[a]ctive recruitment for the City’s staff has been continuous.”
At its regular meeting on November 30, 1995, the Commission addressed the GPO’s complaint and considered a proposed interagency agreement between the Sheriff and the City. Disapproving by unanimous vote the interagency agreement, the Commission stated that the agreement and its purported statutory foundation could not supersede the Com *199 mission’s exclusive jurisdiction under the state constitution to make a determination on the continuing status of classified service positions.
By letter dated October 9, 1996, the Commission notified the City’s Department of Property Management that it had “formally disapproved the Cooperative Endeavor Agreement to provide building security and that the duties described in that agreement fall within the classified service.” The letter further warned that any party making payment of public funds for such services would be considered in violation of La. R.S. 33:2421 and personally liable for reimbursing all such sums.
In September 2000, the Commission sent a public records request to the City’s Department of Property Management seeking production of any contract or agreement between the City and the Sheriff purporting to provide ground patrol or other security-like services together with a statement of the rates of pay and benefits for those Sheriff employees.
lain October 2000, the City responded by producing a Cooperative Endeavor Agreement dated December 10, 1999, between the City and the Sheriff for the calendar year 2000. The Agreement confers upon the Sheriff the authority to provide deputies to the City, through the Grounds Patrol Division of the Department of Property Management, to assist in providing security to protect the City’s public buildings. The Agreement also grants the Sheriffs deputies the .same powers given the City’s GPO. The City also produced two monthly invoices (August and September 2000), reflecting that thirty-six Sheriff deputies were used in both months to provide GPO duties.
In July 2001, the Commission commenced this action for declaratory and in-junctive relief against the City and the Sheriff. In its petition, the Commission alleges that the Cooperative Endeavor Agreement between the City and the Sheriff or any other agreement is a “legally impermissible circumvention of the civil service system.”[1] The petition further alleges that the City, through its Department of Property Management, has ignored the Commission’s 1995 disapproval of the Cooperative Endeavor Agreement and its 1996 notification and has continued to operate under the terms of the Cooperative Endeavor Agreement first proposed and disapproved in 1995.
Both the City and the Sheriff responded to the Commission’s action with exceptions. The City filed an exception of no cause of action, claiming that the Commission’s rule requiring approval of the contract is constitutionally infirm because it violates the City’s Home Rule powers. The Sheriff filed exceptions of no cause of action and no right of action.
| .¡Following a hearing on July 20, 2001 on the exceptions and the Commission’s petition for injunctive relief, the trial court found in favor of the City and the Sheriff, denying the Commission’s request for in-junctive relief and granting the Sheriffs exception of no right of action and the exception of no cause of action filed by both the Sheriff and the City. This appeal by the Commission follows.

DISCUSSION

The Commission asserts that the trial court erred in two respects: sustaining the exceptions of no cause of action *200 and failing to grant injunctive relief.[2] An exception of no cause of action tests whether the remedy the plaintiff seeks under the facts alleged in the petition is valid. As the Louisiana Supreme Court has noted, “[a]n exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief.” City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 10 (La.3/2/99), 739 So.2d 748, 756 (Emphasis supplied). This is not such an unusual case.
The City’s exception of no cause of action was based primarily on the alleged invalidity of the Commission’s rule requiring approval of contracts for professional and personal services set forth in Rule III, §§ 6.1-6.3.[3] The ^constitutional challenge the City raises to the Commission’s rule— 1.e., that it violates the City’s broad Home Rule powers — is the same challenge it unsuccessfully raised in Civil Service Commission of City of New Orleans v. City of New Orleans, 2001-0635 (La.App. 4 Cir. 4/10/02), 826 So.2d 23, writ granted, 2002-1812 c/w 1815 (La.11/1/02), 828 So.2d 581.[4] Affirming the trial court’s rejection of that constitutional challenge, we held that those rules “are clearly and unequivocally within the scope of the Commission’s constitutional and Chartered authority and serve to achieve the goals and objective of the merit system of public employment.” 2001-0635 at pp. 12-13, 826 So.2d at 30. We further reasoned that “[t]he rules protect these classified employees from an administration that would use [such contracts] ... as a means of eliminating civil service protection of the employees and defeating the objectives of providing for selection, hiring, promotion and demotion on the basis of merit.” 2001-0635 at p. 11, 826 So.2d at 30.
Contrary to the City’s contention, our prior decision is not distinguishable. Simply because this case involves an agreement between two governmental entities and Civil Service Commission involved a privatization agreement between the City and a private entity is a distinction without a difference. Although the Louisiana Supreme Court has granted certiorari to review our holding in Civil Service Commission, we are nonetheless bound by that decision unless and until it is overruled.
*201 1 fiGiven the Agreement at issue was never approved by the Commission and the Commission disapproved a prior agreement, we find merit to the Commission’s contention that the Agreement is in violation of its rule and that it is entitled to injunctive relief. In arguing to the contrary, the City contends the Agreement is not subject to the Commission’s rule for three reasons: (1) it is a Cooperative Endeavor Agreement as authorized by La. Const. Art. VII, § 14(C); (2) it is neither a professional service, nor a personal service contract; and (S) its enactment did not displace any civil service employees. We find none of these arguments persuasive.
First, the City’s reliance on the characterization of the Agreement as a Cooperative Endeavor Agreement authorized by La. Const. Art. VII, § 14(C) to remove it from the Commission’s rules is misplaced. Section 14(C) is located in the provision of the state constitution that regulates the donation, loan, or pledge of public credit. The general rule against donating public property is set forth in Section 14(A), which provides:
Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision, shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
Various exceptions, which are not at issue in this case, are enumerated in Section 14(B). Section 14(C), which the City relies upon, defines and authorizes cooperative endeavors, providing:
Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
|7Tracing the history of Section 14 of the current constitution, a commentator notes that this type of provision was adopted in response to the substantial corruption that resulted from provisions in the 1868 Constitution that allowed the state to invest in certain corporations constructing internal improvements, especially railroads. Lee Hargrave, The Louisiana State Constitution, A Reference Guide 131 (1991). Subsequent constitutions thus included this type of provision to “limit the power of the state to use its funds or credit for the benefit of private development.” Id. Although the jurisprudence construing Section 14 and its 1921 counterpart is scant, “[t]he cases that do exist hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so.” City of Port Allen, Louisiana v. Louisiana Municipal Risk Management Agency, Inc., 439 So.2d 399, 401 (La.1983).
Section 14(C) had no counterpart in the prior constitution; “it ‘liberalizes’ the rule of Section 14(A) which ‘if strictly construed would prevent much of what a modern state is expected to do for its citizens.’ ” City of Shreveport v. Chanse Gas Corp., 34,958, 34,959, p. 18 (La.App. 2 Cir. 8/22/01), 794 So.2d 962, 975 (quoting Lee Hargrave, The Work of the Louisiana Appellate Courts for the 1975-1976 Term: Constitutional Law, 37 La. L.Rev. 480, 486 (1977)). Translated, Section 14(C) means that “even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a *202 ‘public purpose.’ ” City of Port Allen, 439 So.2d at 402.
| ¡¡Read in context, Section 14(C) does not authorize political subdivisions to engage in an otherwise legally invalid agreement merely by labeling it a Cooperative Endeavor Agreement. Rather, Section 14(C) presupposes the existence of an underlying legal obligation to transfer public funds, such as a lawful contract.[5] It follows then that, contrary to the City’s contention, characterizing the Agreement as a Cooperative Endeavor Agreement does not remove it from the Commission’s rule.
Second, the City’s argument that the Agreement does not involve a professional or personal service contract but rather a security services contract is merely a semantics argument. See Civil Service Commission, 2001-0635 at p. 13, 826 So.2d at 31 (rejecting a similar semantics argument regarding the term “privatize.”) Regardless, this argument is undermined by a consideration of the purpose for the Commission’s rule. The rule is intended to preclude such contracts from providing for performance of services that could and should be provided by civil service employees. See Jack A. Parker & Associates, Inc. v. State Through Dep’t of Civil Service, 454 So.2d 162, 166 (La.App. 1 Cir. 1984). The security services provided for in the Agreement at issue are personal services included in the duties of a classified service position (the GPO). The Agreement thus involves the precise type of services that the rule is designed to cover.
Third, the City’s argument that the rule should not apply because no civil service employees were displaced as a result of the enactment of the Agreement is a policy argument. The fundamental flaw in this argument is that it overlooks | ^reality; specifically, the City has opted to replace its former classified GPO employees with unclassified Sheriff deputies. As the City acknowledges in its brief to this court, the current number of GPO positions filled is down to nine due to attrition. The City’s actions in this case are the very actions the rule is designed to safeguard against; namely, “governmental agencies ... in time granting] public service contracts for all work currently performed by classified employees and in effect abolish[ing] the classified service.” Jack A. Parker & Associates, 454 So.2d at 166.
Because the Agreement at issue is in violation of the Commission’s rule, the trial court erred in failing to find the Commission entitled to injunctive relief. The Sheriff, however, argues that even assuming the Agreement is unlawful, injunctive relief is nonetheless precluded due to the Commission’s lengthy delay in seeking declaratory or injunctive relief. The Sheriff further argues that the Commission had ongoing, daily notice of the presence of his deputies in the City’s buildings and that it would be an extreme injustice to nullify the Agreement at this late date. The Sheriff still further argues that the delay resulted in a ratification and a tacit approval of the Agreement and that the Commission is therefore equitably es-topped from seeking such relief. We disagree.
Resort to equitable considerations and estoppel is not permitted “when in conflict with positive written law.” Morris v. Friedman, 94-2808, p. 10 (La.11/27/95), 663 So.2d 19, 26 (quoting Palermo Land Co. v. Planning Comm’n of Calcasieu Par *203 ish, 561 So.2d 482, 488 (La.1990)). Valid Commission rules have the force and effect of law. La. Const, art. X, § 10(A)(4); Bannister v. Department of Streets, 95-0404, p. 5 (La.1/16/96), 666 So.2d 641, 647; Paul v. New Orleans Police Dep’t, 96-1441, p. 6, 687 So.2d at 592. The Agreement is in violation of the Commission’s rule; therefore, equitable estoppel does not apply.[6]
Although we conclude that the Commission is entitled to injunctive relief, we nonetheless recognize the pragmatic problems that would result if we ordered that the Sheriff deputies who have been providing security services at City buildings for several years could no longer do so. Moreover, we recognize that the trial court decided this case on exceptions and never tried the issues. For those reasons, we determine that the appropriate remedy is to remand for the trial court to consider the parties’ practical concerns.

DECREE

For the foregoing reasons, the judgment of the trial court sustaining the exception of no cause of action and denying the request for injunctive relief is reversed and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Costs of this proceeding are assessed against the City.
REVERSED AND REMANDED.

. As the Sheriff aptly points out in his brief, the reference to the Cooperative Endeavor Agreement as a single agreement between the City and the Sheriff is technically inaccurate. Rather, there have been multiple, consecutive yearly agreements between them from 1995 until the present.

. Although the Sheriff filed an exception of no right of action and although he continues to argue the merits of that exception on appeal, the Commission does not assign the sustaining of that exception as error on appeal. We thus do not address it.

. Particularly, Rule III, § 6.1 provides:
All contracts for personal or professional services, and amendments thereto, shall be reviewed and approved by the Director well in advance of their effective dates to insure compliance with the Civil Service Law and to determine whether such services should be provided within the classified service. Such contracts shall become effective only when approved by the Director. When so approved, they may thereafter continue for a period not to exceed one (1) year from the effective date of the contract.
The other sections of the rule and the applicable Louisiana Constitution provisions are set forth in our decision in Civil Service Commission of City of New Orleans v. City of New Orleans, 2001-0635 (La.App. 4 Cir. 4/10/02), 826 So.2d 23, writ granted, 2002-1812 c/w 1815 (La.11/1/02), 828 So.2d 581.

.In 2000, the Commission asserted a claim identical to that asserted in this case by amended petition as part of its action against the City challenging a privatization agreement with another private entity in Civil Service Commission, supra. According to the parties, the trial court in that related case dismissed this claim on an exception of improper cumu-lation. The Commission then filed this separate, stand-alone action. Meanwhile, this court in the related action rendered its decision affirming the trial court, and the Louisiana Supreme Court granted certiorari.

. See La. Atty. Gen. Op. No. 01-136, cited by the Commission, which opines that a prerequisite for a valid Cooperative Endeavor Agreement is "the presence of a legal obligation or duty by the transferor to alienate said funds or property” and that this prerequisite is satisfied "by the presence of a valid statute, ordinance, charter or contract.” Id.

. For the same reason, it was not necessary that irreparable harm be shown in this case. It is well-settled that a showing of irreparable harm is only required when the conduct sought to be enjoined is lawful; "when the conduct is illegal, a showing of irreparable injury is not required.” Ouachita Parish Police Jury v. American Waste and Pollution Control Co., 606 So.2d 1341, 1350 (La.App. 2 Cir. 10/14/92)(collecting cases).